EDDY & BISSELL LIVE-STOCK CO. v. BLACKBURN.

(Circuit Court of Appeals, Fifth Circuit. December 10, 1895.)

No. 385.

1. PLEADING—EQUITABLE RIGHTS.

Although, under modern systems of pleading, courts of law, where their remedies are adequate, may enforce equitable rights, it is stringently required that the proof must agree with and support the pleadings, and the relief granted must be within the prayer for relief, and within the grounds alleged and relied on to obtain it.

2. SALE—RECOVERING BACK PART PAYMENT—PLEADING.

Plaintiff and defendant entered into a written contract by which defendant agreed to sell to plaintiff a number of cattle, to be selected by plaintiff in the manner provided in the contract, for $10 per head, of which $2,000 was paid on the execution of the contract, and the remainder was "to be paid on the delivery of the cattle," which was to take place between the 10th and 15th days of October, 1893. Shortly after, plaintiff paid defendant $1,000 more on account. On the 10th day of October plaintiff went to defendant's ranch and selected the cattle, but informed defendant that he could not pay the balance of the purchase money at the time fixed, but hoped to do so in a short while, claiming, at the same time, that the property in the cattle had passed to him, and he was entitled to their delivery without paying such balance. Defendant disputed this claim, but drove the cattle to plaintiff's ranch, tendered them to him, and, upon his failure to pay the balance of the purchase price, drove them back. Plaintiff afterwards sued defendant, setting up the contract and defendant's failure to deliver the cattle, and claiming a return of the $3,000 paid, and damages for the advanced price of the cattle, and the loss of the use of the grass and water at his ranch, amounting to $11,000, and alleging his ability and readiness, at the time of bringing suit,

to pay the price, if defendant would deliver the cattle. Upon the trial, plaintiff, by amendment, alleged that before the tender by defendant he informed defendant of his inability to pay, and defendant then waived such payment, and agreed to deliver the cattle upon his undertaking to pay shortly, but, notwithstanding, refused to deliver, and converted the cattle to its own use, without rescinding the contract or returning to plaintiff the money paid, and refused to sell the cattle for plaintiff's account, but detained and appropriated the $3,000. Defendant, by demurrer, general denial, and special averments, denied plaintiff's right to a delivery of the cattle without payment of the purchase money, and denied any modification of the contract except by indulgence of a few days to the plaintiff, in order to enable him to raise the money, and also claimed damages from plaintiff for expense and loss in driving the cattle to and from plaintiff's ranch. *Held*, that plaintiff was not entitled to delivery of the cattle without payment of the purchase money, and could not, therefore, recover on the contract, and that plaintiff's pleadings contained no allegations which, even under the liberal system of pleading in force in Texas, would enable him to recover upon any equitable claim to a return of the money paid on signing the contract.

In Error to the Circuit Court of the United States for the Western District of Texas.

Plaintiff in error is a corporation, chartered under the laws of the state of Colorado, engaged in the business of stock raising, with one of its ranches in Bailey county, Tex. The defendant in error is a resident citizen of Travis county, Tex., with a ranch in Castro county, Tex., some 60 miles from the ranch of plaintiff in error. On the 23d day of August, 1893, plaintiff in error and defendant in error entered into a written agreement in the following terms:

"State of Texas, County of Bailey.

"This agreement, made and entered into this day by and between the Eddy & Bissell Live-Stock Co., by its agent, D. F. White, of Eddy Co., New Mexico, and Bailey Co., Texas, party of the first part, and W. A. Blackburn, of Austin, Texas, party of the second part, to wit: That for and in consideration of the sum of two thousand dollars ($2,000.00) cash, in hand paid, and the further consideration of the promises and agreement of said Blackburn, party of the second part, as hereinafter stated, that the party of the first part sell to the said Blackburn, party of the second part, all of its yearling steers, supposed to be from one thousand to twelve hundred head, said yearlings branded VVN, shoulder, side and hip marked thus: , no yearlings to be under (12) twelve months old, and to be smooth, merchantable cattle, and to be rounded up and separated from all other cattle, after which the said Blackburn or his agent shall have the right to cut out or reject ten per cent. of the number of said cattle so rounded up or offered; after which the cattle so accepted by the said Blackburn shall be delivered to him or his agent at his pasture in Castro county, Texas, between the tenth and fifteenth days of October, 1893. The said cattle to be passed on before they leave the company's pasture in Bailey county, Texas, by the said Blackburn or his agent. In consideration of the sale of said cattle the said Blackburn agrees to receive and accept said cattle so delivered to him, and to pay to the Eddy & Bissell Live-Stock Company the price of ten dollars ($10.00) per head for each and every steer yearling so delivered; the two thousand dollars now paid as above stated being a part of said price, and the remainder of said price to be paid on the delivery of said cattle.

"Witness our hands in duplicate, this August the 23, 1893.

"Cayotte Lake, Bailey Co., Texas."

At the time of entering into this contract the company desired and insisted upon payment of $3,000 in cash. This was not convenient for Blackburn, and he paid $2,000, as set out in the written contract, and agreed to pay an additional $1,000 within a short while thereafter, if convenient. He did pay this additional $1,000 on the 11th day of September, 1893. On the

night of the 10th of October, 1893, Blackburn came to the ranch of the company, and told White, the company's agent, that he could not pay the balance due on the cattle at the time fixed by the contract for delivery, but that he hoped to be able to get the money in a very short while. He insisted that, under the contract, the title to the cattle was in him, and that he was entitled to have them delivered at the time and place specified in the contract without the payment of the balance of the purchase money. White refused to make delivery upon such terms, insisting that payment of the balance of the purchase money must be made before he would surrender the cattle. At this time the cattle had been gathered and were under herd in the company's pasture, for the purpose of being passed upon by Blackburn under the contract. They were passed upon, and 914 head were selected as filling the requirements of the contract, and the cattle were driven by the company's agents to the ranch of Blackburn, and were there tendered. He failed to pay the balance of the purchase money, the company refused to deliver, and drove the cattle back to its pasture. Upon these points there is no substantial difference between the parties. There is a difference, however, as to the circumstances and agreement under which the cattle were driven over to Blackburn's ranch; the company contending that it was bound to drive them over under the original contract, and that Blackburn insisted upon its doing so, promising that if it would drive the cattle to his ranch, and hold them a day or so, until he could go to Amarillo with defendant's agent, he would and could get the money, and pay the balance on the cattle, and they should then be delivered, and, further, that if he did not get the money, he would pay the expense of driving over, holding, and returning the cattle. Blackburn, on the other hand, contended that the title to the cattle passed to him under the contract, without payment of the purchase money; that he was entitled to have them driven to his ranch, and delivered, without such payment; that he insisted upon this right, but further stated that if White, the company's agent, would go with him to Amarillo, he would there see if he could raise the money, and, if so, would pay it; that if he could not, he would insist on the company's surrendering to him the cattle without payment of the balance, and, if it would not do so, that it must, then and there, repay to him the $3,000 of the purchase money which it had received. Driving the cattle over to Blackburn's ranch and holding them and returning them involved a very considerable expense and damage.

The parties failing to make any adjustment, on the 31st of January, 1894, Blackburn filed in the circuit court of the United States for the Western district of Texas, at Austin, his original petition, setting out the contract above copied, alleging the payment of the $3,000, that the remainder of the purchase money was to be paid when the cattle were to be delivered, and making the copy of the contract an exhibit to his petition. He alleged failure to deliver the cattle as agreed by the company, and, upon this alleged breach by the company, claimed return of the $3,000 of the purchase money, and also the advanced price of the cattle, and special damages in the loss of the use of his grass and water at his ranch, aggregating some $11,000; alleged his readiness, willingness, and ability, at time of filing his petition, to pay the remainder of the purchase money if defendant would then deliver the cattle. Upon trial of the case Blackburn filed a trial amendment to his petition, in which he alleged that on the 11th of October, and while the cattle were still on the premises of the company, he advised the company that he could not pay the balance due on the cattle, and that the company then and there waived the stipulations as to the payment of this balance of the purchase money as provided in the contract, elected not to rescind the contract, and agreed to deliver the cattle to him without payment of the balance of the purchase money in cash, upon his undertaking to make such payment within a short time thereafter, and that it was under this modification of the contract that the company drove the cattle over to his ranch, and that, notwithstanding such modification, after the cattle were there at his ranch, ready for delivery, defendant refused to deliver them, "and converted said cattle to its own use, without rescinding said contract and returning to him his money so paid, or compensating him for his additional

labor and expense, incurred at defendant's instance and request, after he gave said notice and· asked defendant to elect its course, and also refused to sell said cattle for his account, or sell same after receiving the balance due on said contract, turn the remainder over to plaintiff, but defendant wrongfully and unjustly determined to keep and ·appropriate to its own use said $3,000, and also said cattle, to plaintiff's great damage as aforesaid."

On the 9th of March, 1895, the company answered by general demurrer, special exceptions, general denial, and specially declaring upon the written contract, averring that the title to the cattle never passed from it, and was not to pass except upon payment of the purchase money in full; alleging full compliance on its part with all of the requirements of said contract by gathering said cattle, having them passed upon by Blackburn, driving them over to his ranch, and tendering them upon payment of the purchase money, and Blackburn's failure to pay; denying any breach of contract by itself in any respect, or any fault or wrong on its part; admitting that Blackburn came to its ranch before the cattle were driven, and stated his inability to pay at the time the cattle should reach his ranch, but averring that he said and promised that if the company would carry the cattle over to his ranch, and indulge him in two or three days' further time, until he could go to Amarillo with the company's agent, that he would there procure the money and pay it, and the cattle could then be delivered, and that if he failed in this he would pay all the expense incident to such tender and holding the cattle. The company further set out an itemized bill of the expense of gathering and driving the cattle, and holding them at Blackburn's ranch, and taking them back, aggregating about $2,500, and asked for its damages in that amount. Blackburn filed a supplemental petition on the 19th of March, 1895, demurring generally and specially to the company's answer, and denying all the allegations contained in it, and setting up anew his version of what transpired when he went to the company's ranch before the cattle were driven over to his pasture.

Trial was had in the circuit court March 20, 1895. The ruling of the court upon the demurrers was to the effect that the title to the cattle was not to pass to Blackburn, under the written contract, until the payment of the balance of the purchase money, and that he could recover no damages predicated on such title in himself, but that his petition was good for the $3,000 purchase money paid by him. Upon exception by plaintiff, so much of defendant's answer as averred that the $2,000 was paid as a forfeit was stricken out. The jury allowed the company a very small offset for damages, and returned a verdict for Blackburn for $2,950, for which judgment was entered in his favor.

Plaintiff in error excepted to the court's ruling on the demurrers, and also to the charge; the grounds of exception as to the ruling on demurrers being that the petition, with exhibit thereto, showed on its face that the title to the cattle was not to pass until payment of the purchase money, and as no payment or tender thereof was alleged, and no sufficient reason was given for not so doing, the title to the cattle did not pass, and the facts, as set out in the petition, were not sufficient to entitle the plaintiff to recover back the partial payments of the purchase money made by him. As to the charge the exceptions were: That the undisputed testimony showed that no modification of the written contract as to the time of payment or transfer of title had been made. That plaintiff in error had in every respect complied literally with its obligation under the contract, and the defendant in error had broken the contract, and therefore the defendant in error was not entitled to a return of the partial payments of purchase money made by him under the contract of sale. And, further, that if he could, under proper allegations, have recovered the $3,000, he had no such allegations in his petition, or amendments or supplements thereto, and had no foundation for such recovery. In other words, his recovery could only be according to his allegations, and as he had alleged performance on his part and breach on the part of the company, he could not, in his proof, reverse his allegations, and recover upon breach by himself and performance by the company. And, further, that the right to recover the $3,000, on the conditions set out in the charge, if it existed, would be a matter of which a court of law would have no jurisdic-

tion, but which would be exclusively cognizable in a court of equity. Therefore, it could not properly be submitted to the jury in this case. That the measure of damage given is erroneous, the charge being based upon the idea that Blackburn could, of his own choice, without the consent and against the will of the company, abrogate the contract by giving notice, prior to the time fixed in the contract for performance by the company, of his intention not to perform, and by such ex parte proceeding could destroy the rights and duties of the company under the contract, and fix the measure of damages it was entitled to for the breach by the facts and circumstances as they existed at the time and place of giving such notice, instead of by the facts and circumstances as they existed at the time and place provided in the contract.

S. R. Fisher and John C. Townes, for plaintiff in error.

W. M. Walton, for defendant in error.

Before PARDEE and McCORMICK, Circuit Judges, and BOARMAN, District Judge.

McCORMICK, Circuit Judge (after stating the facts). The judge of the circuit court, in his charge to the jury, says that:

"Under the undisputed evidence in this case, the plaintiff committed a breach of the contract by his failure to pay, or offer to pay, to the defendant the contract price for the cattle upon their delivery to him as in the contract set forth."

Such being the undisputed evidence in the case, it is clear to us that the suit on the contract must fail, and the trial judge held, correctly, that the plaintiff "cannot recover any damages of the defendant in this suit." The defendant in error, though he duly excepted to certain rulings of the circuit court, and saved bills of exception, which are embraced in the record filed in this court, did not sue out a writ of error, and is not in a position to complain of the action of that court. He insists that, on the case made in the circuit court, he was and is clearly entitled to the return of the $3,000 he had paid on the cattle, less the actual damages which his failure to fully perform his contract occasioned the plaintiff in error. In this view the trial court clearly concurred, and if the pleadings are sufficient to support such a recovery, there was no material error in the rulings of the circuit court on the subject of damages, and the judgment should be affirmed.

It is plain that the circuit court did not regard the action as resting on the contract, but on what the authorities call "quasi contract," and considered that the pleadings of the adverse parties, taken together, put the court in full possession of the case, and that the court of law could grant such relief as the equities between the parties warranted or required. Even in the practice of the strictest common-law courts, actions are sustained on implied contracts and quasi contracts, although, if not because, the grounds of the recovery sought are equitable. There are many suits in equity which the courts of law cannot entertain, because their remedies are not adequate; but where the practice and processes can fully meet the equities, the courts of law are as ready and efficient as the chancery courts to grant the proper relief. In Texas the pleadings are not formal. Every case is presented by petition and answer. This does not affect the distinction between actions at law and suits in equity

in the national courts, but it to a degree qualifies the distinctions between the different forms of action at common law. It is, however, stringently required that the proof must agree with and support the pleadings, and the relief granted must be within the prayer for relief, and within the grounds alleged and relied on to obtain it. It may be that the judgment of the circuit court fully meets the justice of the case. While we are not disposed to hold that the controversy is one which falls within the exclusive jurisdiction of equity, it does appear to us that the plaintiff (below) should present to the court by his pleadings, truly, the case shown by the indisputable evidence, and the ground on which he is entitled to a return, in part or in whole, of the advanced payment made by him on the contract.

One of the errors assigned is as follows:

"The court erred in its charge to the jury in directing the jury to take into consideration the three thousand dollars ($3,000.00) paid by the plaintiff to the defendant as a part of the purchase price of the cattle (a) because there is no pleading on the part of the plaintiff which would warrant the submission of said issue."

This assignment is well taken, and points out the error which requires the reversal of the case. We do not deem it necessary to notice the other questions in the case, which have been so fairly presented and so ably discussed by the learned counsel who have filed briefs and submitted oral arguments in the case in this court, as those questions may not arise or may not give embarrassment in the future progress of the case.

Reversed and remanded.