CLIFTON, RESPONDENT, *v.* WILLSON, APPELLANT.

(No. 3,179.)

(Submitted April 14, 1913.   Decided May 3, 1913.)

[132 Pac. 424.]

*Sales—Personal Property—Breach of Contract—Advance Payments—Forfeitures—Relief from—Prerequisites—Instructions—Invasion of Province of Jury—Nominal Damages—Nonsuit.*

Sales—Personal Property—Breach of Contract—Nominal Damages—Nonsuit—Error.
1.   Where defendant in an action for the breach of a contract of sale of livestock might, under conflicting evidence, have been entitled to at least nominal damages on a counterclaim interposed by him, it was error to direct a nonsuit as to such counterclaim.

Same—Advance Payments—Forfeitures—Recovery Back—Prerequisites.
2.   One who, after making advance payments on a contract of sale of personalty, refuses to complete the transaction, the seller being ready and willing to fulfill its stipulations, cannot recover them back, unless he can bring himself within the exception provided by section 6039, Revised Codes, by alleging and proving facts and circumstances upon which, in equity and good conscience, he should have relief from the forfeiture, and which excuse him from the imputation of gross negligence, or willful or fraudulent breach of duty.

Same—Liquidated Damages—Pleading and Proof.
3.   Under section 5054, Revised Codes, every contract which provides for liquidated damages on a breach thereof, is *prima facie* void as to such stipulation; therefore, a party seeking recovery upon the contract must allege and prove that it falls within the exception provided in section 5055.

Same—Instructions—Invasion of Province of Jury.

    4.   Where the evidence was in conflict as to which of the parties to a contract of sale of livestock, for the breach of which plaintiff sought recovery in an action in which defendant interposed a counterclaim, was in default, the court erred in charging the jury in effect that defendant was.

Same—Refusal to Accept Delivery—Resale—Effect on Advance Payments.

    5.   After the buyer of livestock had refused to accept delivery of the animals and renounced the contract of sale, he was not in a position to insist that the seller was bound to refrain from reselling them at the peril of incurring the obligation to refund advance payments made by him under the contract.

*Appeal from District Court, Custer County; Sydney Sanner, Judge.*

ACTION by Ben Clifton against Preston H. Willson. Judgment for plaintiff, and defendant appeals from it and from an order denying him a new trial. Reversed and remanded.

*Mr. George W. Farr,* for Appellant, submitted a brief and argued the cause orally.

For Respondent, there was a brief by *Messrs. Hathhorn & Brown,* and *Messrs. Loud & Campbell,* and oral argument by *Mr. William Donald Campbell.*

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Plaintiff brought this action to recover damages for an alleged breach by the defendant of the following contract:

"This is to certify that Preston H. Willson of Miles City, Montana, have this 12th day of April, 1909, bargained and sold to Ben Clifton of Billings, Montana, the following described livestock, and do hereby guarantee the title thereto, and that the said Ben Clifton of Billings, Montana, does hereby agree to purchase the said livestock at the price agreed upon: From 3,000 to 3,200 of ewes, ages as follows, about 200 head of yearling ewes, 1909, at $4.15 per head; about 1,700 head of two (2) year old ewes, 1909 ages at $4.15 per head; balance three (3) and four (4) years old about equal number of ages, 1909 ages at $4.15 per head. Said ewes to be delivered at Ismay

or Terry, Montana, October first at buyer's option. And that said Preston H. Willson of Miles City, Montana, does hereby guarantee said livestock to be all in good merchantable condition at the time of delivery and to pass the government inspection. The receipt of part payment is admitted as follows, to-wit, $800 down and $800 to be paid at the First National Bank of Miles City, Montana, July 1, 1909, or said payment is forfeited and this contract is null and void. The balance of the purchase price is to be paid on the delivery of the above sheep.

"[Signed]    PRESTON H. WILLSON.

"BEN CLIFTON.

"By R. E. GRUWELL.

"Witness: W. J. DUNNIGAN."

It is alleged in the complaint, in substance, that the plaintiff performed all the conditions of the contract to be by him performed; that prior to the date fixed therein for the delivery of the ewes he notified the defendant that he would accept delivery at Terry; that the defendant refused to deliver them at Terry; that the plaintiff thereupon notified defendant that he would accept delivery at Ismay; that plaintiff was ready and willing at the time fixed to receive the ewes at Ismay, and that he offered to pay the balance of the purchase price; that defendant failed and refused to deliver them there or elsewhere, to the plaintiff's damage in the sum of $4,446. In his answer defendant denied any breach of the contract on his part. He then alleged that about three weeks prior to October 1, 1909, it was agreed between him and the plaintiff that delivery of the ewes should be made at Ismay, and that on that date the ewes were at that place ready for delivery; that plaintiff refused to accept them, though defendant then and there offered to deliver them; that it was thereupon agreed that the plaintiff would accept delivery on October 3 or 4; that defendant was then ready to deliver them; that plaintiff refused to accept them; that, because he was required to keep them in close herd, defendant suffered a loss of 225 head of the value of $1,500; that he lost much time and was put to great expense in driving the ewes to Ismay and holding them ready for de-

livery, whereby he suffered additional damage to the amount of $1,500. He demanded judgment for $3,000. There was issue by reply.

At the trial it was conceded by plaintiff that it was agreed that delivery could be made at Ismay and that defendant was ready at that place for delivery of a sufficient number of ewes to meet the requirements of the contract. It was conceded also that the plaintiff, through his agent, R. E. Gruwell, whom he sent to Ismay to receive the ewes, refused to accept them because in his opinion they were not of the character specified in the contract. The controversy in the evidence at the trial, therefore, was entirely with reference to the questions whether or not the ewes offered to the plaintiff at Ismay were such as were specified in the contract, and what amount of damage had been suffered by plaintiff. At the close of the evidence the court ordered a nonsuit as to the defendant's counterclaim, upon the ground that upon any theory of the case the evidence failed to show that he had been damaged in any amount. The jury returned a verdict in favor of plaintiff for $2,600, with interest on $1,600 from October 3, 1909, and judgment was entered accordingly. The defendant has appealed from the judgment and from an order denying his motion for a new trial.

1. Counsel contend that the court erred in directing a nonsuit as to defendant's counterclaim. We think it did. It was [1] a question for the jury, upon conflicting evidence, whether the defendant had failed to tender for delivery ewes such as the contract required and thus breached it, or whether he had fully discharged his obligation by the tender he made. A determination of this controversy in defendant's favor would have entitled him to a verdict for nominal damages, even though there had been no showing by his evidence of substantial loss by plaintiff's refusal to accept. (*Raiche* v. *Morrison,* 47 Mont. 127, 130 Pac. 1074; 13 Cyc. 17; Sedgwick on Damages, 8th ed., secs. 96, 97.) It appears that within a few days after plaintiff had refused to accept delivery, and while the ewes were still held with other sheep at Ismay, the defendant sold the entire herd to one Hammond at the price specified in the contract.

There was no evidence tending to show any item of special damage. Nevertheless the court should, under a proper charge, have left it to the jury to find a verdict for the defendant in nominal damages in case they found that plaintiff had been guilty of a breach of the contract. Inasmuch as the jury found that defendant was in default, had the trial been free from error in other particulars, we should regard the order directing a nonsuit as error without prejudice. Since, however, the defendant is entitled to a new trial because of error in the instructions, we have deemed it necessary to state our views with reference to this feature of the case.

2. These remarks dispose of the contention that the evidence is insufficient to justify the verdict. It presents a case upon conflicting evidence as to who was in default.

3. The court submitted to the jury these instructions: (2) ''The defendant in this action having failed to present sufficient competent evidence to sustain his claim for damages alleged to have been suffered by him, you are instructed that the plaintiff is entitled to have returned to him the moneys paid in part performance of the contract in question, to wit, the sum of $1,600, together with interest thereon at the rate of eight per cent per annum from October 3, 1909, and this irrespective of whom you may find to have been at fault in the failure to carry out the contract in question.'' (15) " * * * In this case your verdict must be for the plaintiff, but you must find and determine from the evidence to what amount he is entitled under the evidence and these instructions and insert such amount, not exceeding $4,150, in your verdict.''

In another part of the charge the jury were told that the plaintiff was not entitled to recover any amount over and above the $1,600 advance payments, with interest, unless they also found that the defendant had failed to tender delivery of ewes of the character specified in the contract; but that if they did so find they should award, as additional damages, such an amount as would be equal to the excess of the value of the property to the plaintiff over the contract price. The theory adopted by the court seems to have been this: That under the

various provisions of the Revised Codes, damages are in all
[2] cases to be measured by the standard of compensation for
the detriment suffered (Rev. Codes, secs. 6038, 6040, 6041, 6048,
6086) ; that save in exceptional cases a stipulation in a contract
of a sum to be paid as liquidated damages as compensation for
a breach is void and cannot be enforced (secs. 5054, 5055) ;
and that it must therefore follow that under the provision found
in section 6039, since defendant had failed to show that he had
suffered substantial detriment, he was not entitled to further
consideration, and plaintiff must be allowed to recover the
amount of the advance payments. In other words, if he were
not permitted to recover, he would be denied the relief to which
he is entitled under section 6039. We think this theory erro-
neous. Section 6039 declares: "Whenever, by the terms of
an obligation a party thereto incurs a forfeiture, or a loss in
the nature of a forfeiture, by reason of his failure to comply
with its provisions, he may be relieved therefrom, upon making
full compensation to the other party, except in case of a grossly
negligent, willful or fraudulent breach of duty." By its terms
it applies to those cases in which a plaintiff has incurred a for-
feiture of payments already made or of the value of some
act done in part performance of the contract, by a breach in
failing fully to perform, and is seeking relief therefrom. It
is based upon the principle that he who seeks equity must do,
or offer to do, equity; and to obtain relief he must by his alle-
gations and proof bring himself within its purview.

At the common law, one who was guilty of a breach of his
contract by stopping short of full performance could not re-
cover payments made prior to the breach, for the obvious reason
that it is the policy of the law to compel parties to live up to
their agreements and not encourage them in their violation.
This rule is recognized by all the courts, so far as we are aware.
(*Perkins* v. *Allnut,* 47 Mont. 13, 130 Pac. 1, and cases cited.)
We cite also the following cases: *Neis* v. *O'Brien,* 12 Wash. 358,
50 Am. St. Rep. 894, 41 Pac. 59; *Witherow* v. *Witherow,* 16
Ohio, 238; *Rayfield* v. *Van Meter,* 120 Cal. 416, 52 Pac. 666;
*Haynes* v. *Hart,* 42 Barb. (N. Y.) 58; *Walter* v. *Reed,* 34 Neb.

544, 52 N. W. 682; *Leonard* v. *Morgan,* 6 Gray (Mass.), 412; *Jones* v. *Marsh,* 22 Vt. 144; *Stevens* v. *Brown,* 60 Iowa, 403, 14 N. W. 735; *Colvin* v. *Weedman,* 50 Ill. 311; *Eddy & Bissell L. S. Co.* v. *Blackburn,* 70 Fed. 949, 17 C. C. A. 532; *Hapgood* v. *Shaw,* 105 Mass. 276; *Hansbrough* v. *Peck,* 5 Wall. (U. S.) 497, 18 L. Ed. 520.    In this latter case it was said: "No rule in respect to the contract is better settled than this: That the party who has advanced money, or done an act in part performance of the agreement, and then stops short and refuses to proceed to its ultimate conclusion, the other party being ready and willing to proceed and fulfill all his stipulations according to the contract, will not be permitted to recover back what has thus been advanced or done." In such cases the adverse party was entitled to retain advance payments or the benefit of an act done in part performance, whether the contract, as here, provided for a forfeiture or not. (*Glock* v. *Howard & Wilson Colony Co.,* 123 Cal. 1, 69 Am. St. Rep. 17, 43 L. R. A. 199, 55 Pac. 713; Tiedeman on Sales, sec. 129.) Manifestly, therefore, the purpose of the section is to provide a remedy by which the party in default may have relief, if he can allege and prove facts and circumstances upon which, in equity and good conscience, he should have relief from the consequences of his own default, and which also excuse him from the imputation of gross negligence, or willful or fraudulent breach of duty.

This view of the provision is consonant with the theory of compensation embodied in sections 6038, 6040, 6041, 6048, and 6068, and also 5054 and 5055, which prohibit parties to contracts from stipulating therein for liquidated damages to be paid for a breach thereof which may occur, save in the exceptional cases mentioned. Under these  provisions, the courts, in adjusting the rights of parties after a breach has occurred, may not permit recovery in any case of a greater or less sum than will compensate the injured party for the detriment suffered by him. By way of supplement to them and in recognition of the rule of compensation established by them, the legislature enacted section 6039, not to abrogate but to modify the rule

as stated in the cases cited *supra,* to the end that a party in default who would otherwise suffer total loss of all advance payments made or of the value of a thing done in part performance of his contract may, in proper cases, recover something notwithstanding he is in default. This must be so, otherwise its presence in the Code cannot be accounted for. Since the language [3] of section 5054 is general, every contract containing a stipulation such as is denounced therein is *prima facie* void as to the stipulation. Therefore, when recovery is sought upon it, the plaintiff's allegations and proof must bring it within the exception provided in section 5055. (*Deuninck* v. *West Gallatin I. Co.,* 28 Mont. 255, 72 Pac. 618; *Long Beach City School Dist.* v. *Dodge,* 135 Cal. 401, 67 Pac. 499.) The same rule is applicable when relief is sought under section 6039. *Prima facie,* one who has violated a contract is not entitled to any relief. If he seeks it, he must put himself within the exception created by the statute; that is, within its equity. Any other rule would enable him to make out a *prima facie* case by a bald allegation that he has partly performed his agreement, that he has determined not to proceed further toward its final conclusion, and that he desires to be relieved from the consequent forfeiture which the law has declared. Adopting the language of the court in *Witherow* v. *Witherow, supra:* "The establishment of such a principle would have a tendency to encourage the violation of contracts—to diminish in the minds of contracting parties a sense of the obligation which rests upon them to perform their agreements. Any principle which would have such an effect ought not to be recognized as sound law. It is the duty of courts to enforce the performance of contracts, not to encourage their violation." The case of *Rayfield* v. *Van Meter, supra,* is on principle directly in point in support of our view, the section of the statute of California, cited (Cal. Civ. Code, sec. 3275) as authority for the conclusion stated, being identical with section 6039, *supra.*

The statute has no application to a case where, as in this case, the plaintiff seeks to recover damages for a breach by the defendant. While he is seeking to recover his advance payments

as a part of the compensation due him, the plaintiff assumes to stand strictly upon his legal rights—risking his chance of ultimate recovery exclusively upon his alleged ability to show that his loss has been due to defendant's failure to deliver the ewes according to his agreement. For these reasons we think defendant entitled to a new trial.

Counsel for plaintiff argue that, even so, the defendant was not prejudiced because the jury found that he failed to tender delivery of ewes of the character stipulated for in the contract. Instruction 15, however, in effect withdrew from the jury [4] entirely the question whether the plaintiff or defendant was in default. It assumed that defendant was and left it to the jury to determine only the amount of damages plaintiff should recover, if any, in addition to the amount of the advance payments; whereas the evidence as to who was in default was conflicting. It was the province of the jury to find on this question and to return a verdict for the defendant if they found that he had made tender of delivery in conformity with the terms of the contract.

Nor is plaintiff in any better position because, after he peremptorily refused to accept delivery, defendant sold the ewes at the contract price to Hammond. Defendant was not bound [5] to hold them indefinitely. The plaintiff refused to accept them and renounced the contract. He could not thereafter claim that defendant was bound to keep them for his benefit at the peril of incurring the obligation to refund the advance payments. If this were so, the result would be that plaintiff by his own wrong could compel the defendant to retain the property which his necessities might require him to sell. This would be unreasonable, and cannot be justified on any principle of law. (*Ketchum* v. *Evertson,* 13 Johns. (N. Y.) 359, 7 Am. Dec. 384; *Rayfield* v. *Van Meter, supra; Neis* v. *O'Brien, supra; McKinney* v. *Harvie,* 38 Minn. 18, 8 Am. St. Rep. 640, 35 N. W. 668.)

4. The correctness of several rulings made by the court in the admission and exclusion of evidence is drawn in question. We do not find material error in any of them.

The judgment and order are reversed, and the cause is remanded for a new trial.

*Reversed and remanded.*

MR. JUSTICE HOLLOWAY concurs.

MR. JUSTICE SANNER, being disqualified, did not hear the argument and takes no part in the foregoing decision.