## MONTANA WATER CO. v. CITY OF BILLINGS.

(District Court, D. Montana. May 1, 1914.)

No. 9.

1. WATERS AND WATER COURSES (§ 200*) — PUBLIC WATER SUPPLY — FRANCHISES—DUTY OF WATER COMPANY.

Where a city granted complainant a franchise to furnish water to the city and its inhabitants, complainant owed to the community a continuous duty to supply pure and wholesome water, and the city was bound to see that such duty was performed, and if complainant failed to perform for other and unforeseen causes, or failed to promptly repair defaults due to such causes, it was the city's duty to compel full performance, or to avoid the franchise or contract, or both.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 274; Dec. Dig. § 200.*]

2. WATERS AND WATER COURSES (§ 188*)—MUNICIPAL WATER SUPPLY—FRANCHISES—CONTRACT.

Where a city ordinance granted to complainant water company a franchise conferring on it the right and duty to occupy for an indefinite time the streets of the city with a water system, and to vend pure and wholesome water to the city and its inhabitants if they desired to buy, and also contained a contract for 20 years to sell water to the city, which was obligated to buy at specified rates, and also to purchase complainant's system at the end of the term or renew the contract for a similar period, the franchise and contract were separable, and the fact that the city failed to perform its obligation under the contract to buy the system, or renew the contract, did not estop it to claim a forfeiture of the franchise because of complainant's failure to furnish pure water and an adequate pressure and supply.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 287, 288; Dec. Dig. § 188.*]

3. WATERS AND WATER COURSES (§§ 188, 200*)—ORDINANCES—FRANCHISES—CONTRACT—TERMINATION.

Where an ordinance granted a water company a franchise to occupy defendant's streets for an indefinite time with a water system, and to vend pure and wholesome water to defendant and its inhabitants if they

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

desired to buy, and also contained a contract by which the company agreed to sell and the city to buy water for 20 years at a specified price, and to buy the system at the end of the term or renew the contract for a like period, the city was entitled to terminate the contract by the exercise of its own powers, for the company's failure to perform, but was bound to resort to the courts if it desired to terminate the franchise for any such default.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig §§ 274 287, 288; Dec. Dig. §§ 188, 200.*]

4. WATERS AND WATER COURSES (§ 200*)—MUNICIPAL WATER SUPPLY—CONTRACT—TERMINATION.

Where a city contracted to take water from a water company and to buy the system at the end of a specified term or renew the contract, and because of the company's failure to furnish proper pressure and wholesome water the city refused to longer recognize the contract as of binding force, treated it as terminated, and resisted a suit by the company for specific performance, such acts constituted an election on the city's part to terminate the contract, which was not waived by the city's continuing to receive service.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 274; Dec. Dig. § 200.*]

5. WATERS AND WATER COURSES (§ 196*)—MUNICIPAL WATER SUPPLY—CONTRACT—WAIVER.

Where a city contracted to take water from a water company to which it had granted a franchise, and at the end of a specified period to purchase the system or renew the contract, the fact that the city might or did waive the company's breach of the contract by continuing to accept performance did not also constitute a waiver of the city's police power to insist on a performance of the company's continuing duty to furnish a wholesome supply.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 270; Dec. Dig. § 196.*]

6. ESTOPPEL (§ 68*)—GROUNDS—CLAIM IN JUDICIAL PROCEEDING.

Where invalidity of a contract by a city to buy complainant's water system, or renew the contract to accept service for a specified period, was assigned as a reason for defendant's refusal to buy or renew, that did not estop the city from thereafter assigning complainant's failure to perform the continuing obligation of its franchise to supply pure and wholesome water as a ground for, such refusal.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 165–169; Dec. Dig. § 68.*]

7. SPECIFIC PERFORMANCE (§ 94*)—RIGHT TO RELIEF.

Where a city granted a water company a franchise to use the streets for a water system, and the ordinance also contained a contract by which the city agreed to purchase water from the company for a specified term, and at the end of such term to either buy the system or renew the contract, the water company, having failed to perform its franchise obligation to furnish proper service and pure water, did not come into equity with clean hands, and could not compel specific performance of the city's contract to purchase the plant or renew the contract.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 249–256; Dec. Dig. § 94.*]

In Equity. Suit by the Montana Water Company against the City of Billings to compel specific performance of a contract for municipal water supply and to enforce a renewal clause in the contract. Decree for defendant.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Gunn, Rasch & Hall, of Helena, Mont., and O. F. Goddard and W. M. Johnston, both of Billings, Mont., for complainant.

Walsh, Nolan & Scallon and Edw. Horsky, all of Helena, Mont., and James L. Davis, City Atty., of Billings, Mont., for defendant.

BOURQUIN, District Judge. In its present aspect this is a suit to compel specific performance of a contract for a municipal water supply, to enforce a renewal clause. The defenses are invalidity of the contract and nonperformance by complainant.

From the evidence it appears that defendant, a city of this state, was incorporated under a special act of the Legislature of date March 10, 1885. Therein were limitations upon the power to create debts and restrictions upon the method of contracting. The first involved authorization by a vote of electors; the second, advertising and awarding to the lowest responsible bidder. In disregard thereof, defendant's council by ordinance tendered to complainant's predecessor in interest a franchise for works to supply defendant and its inhabitants with water for an indefinite time, and also therein a contract to supply defendant with fire hydrants and water for 20 years at an annual rental fixed therein, which contract included an option to defendant to purchase the water system at the end of said term at a price to be then determined by commissioners appointed as therein provided, and a promise by defendant that if it did not exercise the option, it would renew the contract for 20 years upon terms to be then mutually agreed upon, with a proviso that the "prices" should not exceed those fixed by ordinance, and that renewal would not "annul" any the operation of the ordinance. Terms and conditions were set out in great detail, providing, amongst other things, that pure and wholesome water should be supplied, that the system should have strength to simultaneously throw a certain number of streams a prescribed height if necessary, and that if at any time the beneficiary failed to comply with any material term, condition, or stipulation of the *ordinance,* defendant could forfeit rentals, and, such failure continuing for 60 days, unavoidable delays and accidents excepted, could terminate the *contract.* The ordinance was to take effect upon execution of a contract in accordance with its terms, conditions, and stipulations. The tender was accepted, and a contract in accordance with and incorporating said ordinance executed. The works or system was constructed, and, although not of the required strength, the defendant commenced paying rentals on April 1, 1887, but declaring the deficiency should be supplied as speedily as practicable. Rentals as fixed by the ordinance and contract were paid to February, 1912. In April, 1893, defendant elected to abandon the said special act and to subject itself to the general laws of the state, and thenceforward and now so continues. Then and until July 1, 1895, said laws contained no limitations and restrictions like those aforesaid of the special act, but on the latter date like restrictions were incorporated therein and continue to this day. The first term of 20 years ran its course. Defendant, of 600 inhabitants in the beginning, grew, and the water system with it. There was more or less continuous failure in the required strength of the system, or to furnish the same

if it possessed it, save for the last four or five years of said term. Defendant complained thereof, and some effort was made by the owner of the system to make up the deficiency. From April, 1887, the system was and now is defendant's only source of supply. At no time has defendant assumed to forfeit rentals or to terminate the contract other than by refusal to further perform and by its defense herein. At all times defendant received and receives from complainant such service as the latter has rendered and is rendering. In 1906 defendant determined to construct a city water system. It voted bonds therefor, but they failed of sale. The term expired April 1, 1907, and defendant neither exercised its option to purchase nor renewed the contract, and at no time made any effort in accordance with the latter's terms to do either. Then and at all times hitherto complainant was and now is ready and willing to sell the system or to renew the contract in accordance with the latter's terms. Then and at all times hitherto defendant's position has been one of refusal to perform so far as purchase or renewal in accordance with the terms of the contract are concerned, and without reasons assigned other than by inference and by its defense herein, while complainant's position has been and is as aforesaid, and of claim that the contract was renewed for 20 years by defendant's continuance subsequent to the original term of 20 years to receive and pay for water in accordance with the terms of said contract. Thereafter various tentative propositions were exchanged by the parties, with no satisfactory result. In 1909 a "working agreement" was entered into by them, to provide for additional mains and hydrants, without prejudice to the rights of the parties, which agreement has been abrogated. In the face of defendant's attitude of 1906 and hitherto, the owner of the system (complainant since 1908) hesitated to sufficiently improve the same. From what is described as the Yegan fire in 1909 and thenceforward the system either had and has not the required strength, or there was and is failure to furnish it when necessary. From the beginning the only feasible source of water supply was and now is the Yellowstone river, and therefrom was and is the system's supply. During the original term of 20 years there was more or less periodical impurity and unwholesomeness of the supply; sediment in high-water stages perhaps being most marked. For many years, and gradually increasing with increase of settlement, ranches, resorts, towns, and cities along said river and its tributaries and above the system's intake have discharged sewage and other contaminating matter into said river, in consequence of which the water supplied by complainant is not pure and wholesome, and has not been for all the time since the expiration of the term aforesaid, but on the contrary is, and for the interval last aforesaid has been, impure and unwholesome to a degree menacing and injurious to the health and lives of its consumers. During all this time the owner and complainant did nothing to purify said water other than to construct an inadequate settling basin and to install, about six months prior to final hearing herein, a crude, temporary chlorinating apparatus, both of which have been intermittently employed with poor results. Because of the conditions aforesaid pure and wholesome water cannot be supplied by complainant save by large expenditure for

and construction of adequate facilities and instrumentalities for a purification adjunct to the system.

[1] The defendant now has about 13,000 inhabitants. At the time of the abrogation of the "working agreement" of 1909 and hitherto defendant has enjoyed and now enjoys service from 170 hydrants of complainant's, installed on the former's order, for which service defendant has refused to pay the contract rentals since February, 1912, but offers to pay the reasonable value thereof. In 1913 defendant again voted bonds to construct a city water system, which bonds failed of sale. Upon these facts the conclusion of law is that complainant is not entitled to the relief sought. Briefly, it well may be that, though the contract was invalid in its inception for disregard of the special act's limitations of and restrictions upon the council's powers, since it always was within defendant's general powers, it was capable of ratification or renewal, and was ratified or renewed by defendant's recognition and performance and receipt of benefits under it for a period of time when, by virtue of the general laws aforesaid, defendant had power to make such a contract in the manner this was made, and thereafter its obligation was beyond impairment by subsequent legislation. Assuming this to be so for the purposes hereof, it is believed that complainant's failure to perform the obligation imposed upon it by the franchise to supply the city and its inhabitants with pure and wholesome water deprives it of any right to relief in equity, to specific performance. This failure is of long standing. Until recently, sediment and other impurities were present in high-water stages. Undoubtedly sewage and drainage from cities and other habitations above the system's intake polluted the water from the beginning. This steadily increased and is increasing, to an extent that the water is repellant and unsafe, and for at least the last six years some patrons necessarily have either rejected it and imported water, or filtered or boiled it for use. To epitomize in part the language of the Supreme Court of the United States in a somewhat like case, to supply pure and wholesome water was complainant's most vital obligation. Primarily it is of the highest police duties of municipalities. Nothing is more essential to the health and well-being of the community than its competent discharge. A municipality may invoke the aid of others therein, but it is bound to see that they do not default. And those who contract to perform this municipal duty are held responsible for the source, quantity, quality, protection from pollution, and effective distribution of the water they supply. If, as here, they contract to supply pure and wholesome water, they cannot perform their agreement without living up to these responsibilities. The needs of the community are continuous, and are the measure of the duty. Hence it is not enough that in the beginning or intermittently the contractors give full performance. As in any contract of continuing obligation, they must so perform day by day throughout the life of their franchise and contract. If they fail therein for other than unforeseen causes, or fail to promptly repair defaults due to the latter, it is the duty of the municipality to compel full performance, or to avoid the franchise or contract, or both. See Columbus

v. Mercantile, etc., Co., 218 U. S. 654, 31 Sup. Ct. 105, 54 L. Ed. 1193; Mann v. Water Co., 202 Fed. 863, 121 C. C. A. 220.

[2] It is of complainant's contentions, however, that by refusal to buy or renew at the expiration of the term, defendant failed to perform its obligation under the contract, and so is estopped to complain of complainant's failure in respect to its obligations. If the contract alone was involved, this would be sound, provided complainant had not justified defendant's refusal by prior failure to perform its obligation to supply pure and wholesome water. But the franchise must also be considered.

The ordinance that provided for both franchise and contract also provided for corresponding rights and duties. The franchise conferred upon complainant the right and duty to occupy for an indefinite time defendant's streets with a water system and vend pure and wholesome water to defendant and its inhabitants if they desired to buy. The contract likewise for 20 years to vend such water to defendant obligated to buy it, and also obligated to buy the system at the end of said term, or to renew the contract for a like term.

[3] By a reasonable construction of the ordinance it distinguishes the franchise from the contract. This is more favorable to defendant, though there be incidental advantage to complainant; and hence by settled principles in respect to public grants the ordinance must be so construed. It is more favorable to defendant in that, so construed, defendant can terminate the contract without also terminating the franchise, and so still insist upon service from complainant at reasonable rates, whereas, otherwise, the contract and franchise terminated, all complainant's obligations to service also would be terminated, and neither defendant nor its inhabitants could exact service on any terms or at all. Furthermore this is the practical construction of the ordinance by the parties in all their negotiations, acts, and conduct throughout the years. The ordinance confers upon the city the right to terminate the contract for complainant's failure to perform any of the duties aforesaid, be they of franchise or of contract, or of both. And if defendant's conduct in respect to the contract disables it to terminate the contract for complainant's failure to perform the contract obligation, it cannot disable it to terminate the contract for another reason—for complainant's failure to perform the franchise obligation to supply the inhabitants of defendant with pure and wholesome water. The loss of one right is not the loss of the other. It would seem that the ordinance created the right in defendant to terminate the *contract* by the exercise of its own powers for any failure of complainant to perform; but, to terminate the *franchise* for any such failure, a matter of graver consequences, defendant was left to the usual resort to the courts to that end. Complainant also contends that, in view of the ordinance, defendant's only remedy for complainant's failures is notice thereof to complainant, and, if the failures are not cured, but continue 60 days thereafter, termination of the contract, and that such failures cannot be availed of as a defense herein, citing the Walla Walla Case, 172 U. S. 1, 19 Sup. Ct. 77, 43 L. Ed. 341; The Urbana Case (C. C.) 174 Fed. 348, and the Great

Falls Case, 19 Mont. 518, 49 Pac. 15. All said cases are patently distinguishable from the instant suit.

[4] The ordinance herein does not prescribe notice. Complainant knew the quality of the water it was delivering as well as did defendant receiving it. Complaints were made. Complainant was bound to know whether or not it was performing its obligations. If it failed therein for the prescribed 60 days, defendant could of its own motion terminate the contract. Defendant did terminate it by refusing to longer recognize it as of binding force and obligation, by treating it as terminated, or it does terminate it by resisting specific performance because of the said failures. Another contention is that all complainant's failures were waived by defendant's continued receipt of service under the contract. To this it may be again observed that the said failures are not of contract obligations alone, but of franchise obligations as well.

[5] Though defendant might waive the former, of contract rights, by continuing to accept performance by complainant, this would not involve waiver of the latter, of the police power. For either failure the ordinance gives to defendant the right to terminate the contract. So, too, waiver of a failure of yesterday does not estop to complain of a failure of to-day. Furthermore it must be remembered that defendant received the water, though impure, by the force of circumstances. Complainant had the only supply. Complaining of failures therein, defendant publicly moved in the direction of a new system, a long and difficult process of which this suit is a part. Defendant was virtually compelled to take water from complainant, but complainant was not compelled to supply impure water. This is not waiver of complainant's failures therein.

[6] There has been no change of ground or inconsistency of position by defendant, as claimed by complainant, and to which it cites Ry. Co. v. McCarthy, 96 U. S. 258, 24 L. Ed. 693. If invalidity of the contract had been assigned by defendant as the reason for its refusal to buy or renew, that would not estop it from thereafter also assigning complainant's failure to perform the continuous obligation of the franchise to supply pure and wholesome water. The first involves the contract; the second, the franchise. More seems unnecessary.

[7] It may be observed, however, that any controversy like unto this—the well-nigh irrepressible conflict between public service corporations and the communities they serve—has its serious consequences for both parties. Each of them should greatly endeavor, so far as it consistently can, to not only minimize these consequences to itself but to the other as well. Fair dealing and expediency both demand it. And unheeded, to whomsoever is the victory it may be found a Pyrrhic one. With this, however, the courts have no concern.

Here, the fact remains that complainant failed in its most vital obligation, involving the health and well-being of a large community, and is vulnerable to the maxim, "He who comes into equity must come with clean hands."

It is not entitled to specific performance, and decree will be entered for defendant.