## WENHAM *v.* SWITZER.

*(Circuit Court, D. Montana. June 27, 1892.)*

PRINCIPAL AND AGENT—EXCEEDING AUTHORITY—RATIFICATION.

> Plaintiff authorized defendant to purchase for him a half interest in a mining claim for $1,500, and sent $500 to be used as a first payment. Defendant purchased the whole mine for $4,000, and took a deed in his own name. He then wrote plaintiff, explaining what he had done, and saying he would make a deed for one half on receipt of $1,500 more. Plaintiff answered, accepting the offer, and asked for a more specific description of the property, but sent no more money. Defendant testified that he never received this letter, but that he wrote another letter, stating that the money must be paid within a certain time. Plaintiff said he never received this letter. He waited 10 months, and then sent $1,000 instead of $1,500, asking defendant to state the balance due. *Held*, that defendant, as plaintiff's agent, had exceeded his power in the purchase, and his action was not binding without ratification; that the letter of acceptance, without sending money, was not a sufficient ratification, even if received; and that the delay of 10 months was unreasonable, and defendant had a right to repudiate the agency, and hold the mine as his own.

In Equity. Suit by A. A. Wenham against William S. Switzer. Bill dismissed. For report of decision on motion to strike depositions from the files, see 48 Fed. Rep. 612.

*Word, Smith & Word*, for complainant.

*A. H. Nelson*, for defendant.

KNOWLES, District Judge. Plaintiff in his bill of complaint charges that he and defendant entered into a contract by the terms and conditions of which it was agreed that plaintiff and defendant were to pur-

chase the Burner lode claim, situate in Summit Valley Mining District, Silver Bow county, Mont.; that the defendant had the sole management of the negotiations for the purchase of said property; that it was agreed that the same should be purchased for their joint benefit, and each was to have an undivided half interest in the property; that defendant represented that said property would cost about $3,000, and that the one-half interest which plaintiff would receive would cost about $1,500, the exact sum said property would cost not then being known; that plaintiff first advanced to defendant, on account of said purchase, the sum of $500, which was so received by defendant, and subsequently the sum of $1,000; that, instead of purchasing said property for the joint benefit of plaintiff, the defendant purchased said property in his own name; that he represented to plaintiff that he paid therefor the sum of $4,000; that plaintiff tendered to said defendant the balance of said purchase price, namely, $500, with interest up to the date of tender, and at the same time presented to defendant a deed to be signed by him to the one half of said Burner lode, and demanded of him to deed the same to plaintiff, which he refused to do. The defendant denies in his answer the alleged contract to purchase said lode for the joint benefit of himself and defendant. He admits that he received the $500 and the $1,000 from plaintiff, but denies that he received the same on account of the purchase of the Burner lode, or used either of said sums in that purchase. The negotiations for the purchase of an interest in said Burner lode were carried on by letter. All of these letters, except three, are before me, and the contents of the missing letters were testified to on the trial before the court. Plaintiff, it appears, is a citizen of Cleveland, Ohio, and the defendant of Butte City, Mont.

Upon an examination of these letters, I find the facts to be that on October 2, 1887, defendant owned a one-half interest in the said Burner lode. On that date he wrote to plaintiff that he thought the other one half could be bought for $1,500, and if plaintiff had a friend who desired this one half of it to let him know; that the claim was a good one; and that he had bought and paid about $2,000 for the other half. It appears from the evidence of plaintiff that he wrote to defendant, in answer to his letter of October 2, 1887, making some inquiry about the claim defendant had mentioned. On March 7, 1888, defendant wrote to plaintiff:

"I think you will do well to secure the interest I spoke of, joining the Alta claim."

From the evidence it sufficiently appears that this referred to the property in dispute.

On March 15, 1888, plaintiff wrote to defendant:

"Now, about the claim adjoining the Alta, I want to go in with you. Could the interest be bought for $1,000.00?"

On April 5, 1888, plaintiff wrote to defendant:

"How about the claim adjoining the Alta claim? Can you secure the one half you spoke of? Let me hear from you as soon as practicable."

On the 13th of April, 1888, defendant wrote to plaintiff:

"In relation to the interest nearest the Alta, it can't be had for less than about $1,500.00, if it can be bought at any price, but I shall know in about twenty days, and I will write you as soon as I can get to know what I can let you have it for. He may get excited, and ask more."

In the same letter he says:

"One thing more: If you conclude to take the interest, you had better send $1,500.00 to the First National Bank of Butte, as if you wait it may slip into other hands. I am good for all you send me."

On April 23, 1888, plaintiff wrote to defendant:

"Yours of the 13th at hand, and contents noted. According to your wishes, I inclose you $500.00, payable to your order. This is a New York draft, and is as good as gold at the First National Bank in your city; in fact, the banks prefer drafts to currency. Now, if you go quietly to work, and not let the party who wants to sell get excited, when he agrees to sell give him the $500.00 to bind the bargain, and you can telegraph me for the other $1,000.00, which I will send immediately upon receipt of notice; and, if you can't buy all of his interest, buy half of it."

In answer to this the defendant wrote plaintiff:

"MY DEAR SIR: Yours of the 23d, 1888, is received, with one check of $500.00, on the First National Bank of Cleveland, Ohio. The mining lode claim is known as the Ontario or Burner lode mining claim. Soon as I can hear from the party, the matter will be concluded. The money is in bank."

On June 4th following plaintiff wrote defendant a letter about loaning the money to one C. C. Frost, and he would replace it, but the money was not so disposed of.

On June 5, 1888, defendant wrote plaintiff:

"In relation to the Burner mining property, I have got it all, and paid for it, and surveyed it for a patent.. But am doing one hundred dollars' worth of work, so as to have over $600.00 worth of work, which will be necessary improvement. I am sure of two veins in the ground. But it cost more than $1,500.00. It all cost me about $4,000.00, all told. But I was determined to have it, if it cost more. It will pay to hold when patented. Property is rising in Park canon. Under the circumstances, I had to take a deed in my own name, and, of course, had to pay for it on delivery of the deed, and came near losing it at that; others would have taken it at higher figures. Now, friend A. A. Wenham, send me $1,500.00, and I will make you a deed of one undivided half of the entire Burner property, free of all work except-ing the $100, which I am now doing, which will be over $600.00, sufficient to get the patent. Then you will have to stand one half of the expenses of the patent, which only is the regular prices in this district and territory. As I have received $500.00 of you, so the balance, $1,500.00, will make the pur-chase money of your part $2,000.00. I will [write] you more in detail next letter."

Plaintiff in his evidence testifies that he wrote a letter in answer to this, accepting defendant's offer, and asking for a more specific descrip-tion of the property. Defendant denies that he ever received this let-ter. Defendant in his evidence says that soon after he wrote to plain-tiff, on June 5, 1888, he wrote him another letter, telling him he must pay the money to him (the defendant) within a certain time. Plaintiff

denies that he ever received this letter. On April 6, 1889, plaintiff wrote defendant asking for a plat, specifications, and drawings, and inclosed him a New York draft for $1,000, asking him for amount of balance due him. On May 30, 1889, defendant wrote plaintiff:

"*Mr. A. A. Wenham:* Your note of April 6th, 1889, containing one check of one thousand [dollars,] I deposited in the First National Bank for safekeeping until you call for it. Also your five hundred [dollar] check is in bank subject to your order."

Then there is an offer to invest this money in Monitor stock. Then this follows:

"I can't make you any deed to or in the Burner ground."

It will be seen, from a reading of the extracts, that the transaction between plaintiff and defendant, as set forth in the bill, is not correct. These extracts were taken from letters which treat principally of other matters, mostly about the tunnel on the Monitor lode. The understanding was that defendant should act as the agent for plaintiff in purchasing the one half of the Burner lode. This was a voluntary undertaking, and it does not appear that plaintiff was to pay anything or defendant to ask anything for this service. It was not an agreement by which plaintiff and defendant were jointly to purchase the Burner lode, or that in any sense the agreement was for a joint transaction. There is enough to show, perhaps, that plaintiff did authorize defendant to purchase a one-half interest in that lode for $1,500, but not for any more. When defendant informed plaintiff that he had better send him the $1,500 with which to purchase the claim, plaintiff sends him $500 in a draft on a bank in which he seems to be be connected, and informs him that he will send the remaining $1,000 when the purchase is made. In this there is no authority to purchase this interest in the Burner lode for any amount to exceed $1,500. Defendant could not bind plaintiff by any purchase of that lode which involved an expenditure of any sum to exceed that amount. An agent must pursue his authority strictly, and, if he exceeds it, he makes himself personally liable. As far as plaintiff is concerned, he was not bound by any purchase of that property for $2,000. When defendant informed plaintiff that he had paid about $2,000 for the one half of the Burner lode, and had taken the deed in his own name, and that he would deed to him the same on the payment to him (the defendant) of the $2,000 he had expended, plaintiff testified that he wrote to defendant telling him he would take the property, but asking also for plats and specific descriptions thereof. Undoubtedly plaintiff had a right to ratify this act of his agent, but was the simple notification that he would take the property a sufficient ratification of that act? I think not. He says he waited 10 months, expecting these specifications and plats. What for? To see whether he would accept the proposition of defendant? It looks very much as if that might have been the motive. He says he accepted the proposition without receiving them. Why he should have waited 10 months before sending any money on this accepted

proposition is not very well explained. At the end of 10 months plaintiff does not send to defendant the $1,500, which would be the balance of the purchase price of the property, but only $1,000, and asks defendant to figure up the balance. Plaintiff testifies that he expected the representation work and expenses for procuring a patent to be included in this balance. This was not the proposition of defendant. The proposition was that plaintiff was to pay $2,000, and was to have a deed for the one half of the Burner lode. This was plain enough. There was no figuring to be done on the balance. It was plainly stated by defendant in his letter to him what amount plaintiff was to pay as a balance before receiving a deed. As defendant had undertaken to act as an agent for plaintiff, he was required to be loyal to his trust, and not act for himself. But I do not think he was required to wait indefinitely to see whether plaintiff would ratify his action in paying $2,000 for the property. Plaintiff should have ratified the action of defendant within a reasonable time. Defendant says he wrote to plaintiff he must do this within 30 days. Plaintiff testified that he received no such letter, and the evidence of defendant on this point is not as clear as it might be. But whether he wrote such a letter or not, it appears to me the delay of about 10 months in ratifying the action of defendant by plaintiff, as he should have done by paying to defendant the money he had expended, was unreasonable, and that defendant had the right to maintain that plaintiff had left him to shoulder the responsibility he had assumed, and to treat the purchase as his own. There is no pretense but that defendant paid the full amount of $2,000 for the property.

Although it might be held that the position claimed on the trial of the cause is only an immaterial variation from the case presented in the bill, still I do not think plaintiff is entitled to recover, even upon this assumed position. The order of the court is that the bill be dismissed, and defendant have judgment for his costs.