YELLOWSTONE COUNTY, RESPONDENT, *v* WIGHT *et ux.,* APPELLANTS.

(No. 8421.)

(Submitted September 30, 1943. Decided December 24, 1943.)

[145 Pac. (2d) 516.]

412

*Mr. Fred G. Huntington,* for Appellants.

*Mr. R. V. Bottomly,* Attorney General, *Mr. Clarence Hanley,* Assistant Attorney General, *Mr. R. F. Hibbs,* County Attorney, *Mr. Frederic Moulton,* and *Mr. Chas. B. Sande,* Deputy County Attorneys, for Respondent.

*Mr. William A. Brown, amicus curiae,*

*Messrs. Melvin N. Hoiness* and *E. E. Collins,* acting in behalf of *Mr. Hibbs,* the county attorney, in the matter of petitioning for a rehearing, he having been inducted into the military service of the United States.

MR. JUSTICE ANDERSON delivered the opinion of the court.

This is an appeal from a judgment in an action brought to quiet title to real estate.

The complaint is in short form, alleging title and right to possession in the plaintiff and unfounded adverse claim of title by the defendants. The prayer is for adjudication and quieting of title in the plaintiff as against the defendants and for general relief.

Defendants by their answer deny the ownership of plaintiff and allege that they themselves are the owners of the real estate claimed; that they are in possession thereof under a sale contract made to defendant John Wight by the plaintiff on November 5, 1934, which they allege is in full force and effect. The prayer of the answer is that the rights and title of the defendants as claimed by them be adjudicated and decreed to be in full force and effect, and that they be adjudged to have the equitable title to the land. There is the further prayer: "That the court ascertain what sum, if any, may be due plaintiff under said contract and if it be found there be due to plaintiff any amount under said contract defendants be given a reasonable time, in accordance with established rules in equity, within which to make payment thereof and to secure to themselves, or their assigns, deed thereto from plaintiff. Defendants pray that they have such further relief as may seem to the court to be just and equitable."

Trial was had and the court made findings of fact and conclusions of law upon which judgment was entered. The judgment declared plaintiff to be the owner of the land and entitled to the possession thereof, and quieted its title thereto as against the defendants. The appeal is from the judgment and on the judgment roll.

The pertinent facts found as the basis for the judgment are as follows: The plaintiff, Yellowstone county, owned 1,720 acres of land which, on November 5, 1934, it contracted to sell to the defendant John Wight for the sum of $1,902.60. The sum of $380.42 was paid down and the balance was, by the contract, made payable in four successive equal annual installments commencing November 5, 1935. The purchaser was to pay all taxes. Time was made of the essence of the contract, and in event of any default in payment the vendor should be released from the obligation to convey and should retain all moneys paid and improvements made by the vendee as rental for the premises and as liquidated damages for breach of the contract. The vendee

had defaulted in the payments to be made and had failed to pay the taxes. The following are the only payments that were made:

| | | |
|---|---|---|
| $380.52 | Principal | At the time of purchase |
| 360.00 | " " | May 11, 1936 |
| 20.00 | " " | July 3, 1936 |
| 100.00 | " " | October 28, 1936 |
| 5.00 | Interest | July 3, 1936 |
| 100.00 | " " | September 14,1939 |

No taxes were paid and there was a total of $356.97 delinquent for the years 1935 to 1940, inclusive. The vendee had remained in possession and had made valuable improvements on the premises, but as to the amount of the value of such improvements the court was unable to determine. The only interest of defendant Susan M. Wight was such as she might claim as the wife of the vendee.

On July 30, 1940, the county commissioners by resolution declared the contract in default and declared their intention to cancel it unless the terms were complied with on or before August 31st. Notice thereof was given to Wight. He failed to comply and on September 17th the commissioners adopted a resolution declaring the contract cancelled and the rights of the defendant Wight thereunder forfeited and terminated. Notice thereof was given to Wight on September 19th.

It was further found as a fact that at the trial of the action the defendant John Wight offered to pay, and tendered, the full amount of delinquent payments, interest and taxes under the contract, which would constitute payment in full. The offer was refused. The facts found by the court are not questioned.

There is no transcript of the testimony and proceedings in the lower court; the record on appeal consisting of the pleadings, the court's findings, and the judgment. The question then is whether the court reached the right conclusion on the facts found, and whether on the pleadings and the court's findings the plaintiff is entitled to the judgment as rendered.

Defendants' prayer in effect asks for relief against forfeiture. Section 8658, Revised Codes, provides: "Whenever, by

the terms of an obligation, a party thereto incurs a forfeiture, or a loss in the nature of a forfeiture, by reason of his failure to comply with its provisions, he may be relieved therefrom, upon making full compensation to the other party, except in case of a grossly negligent, wilful, or fraudulent breach of duty.'' A forfeiture of the rights of a vendee under a contract of sale of real estate may be relieved against by returning payments made or by allowing vendee, on reasonable condition, to perform and save his contract. In the second alternative, it is necessary that the defaulting vendee make a tender of complete performance, which was here done.

Section 8658 has been construed by this court in a number of cases, and the rule thereunder is that ''a person may be relieved under it in any case where he sets forth facts which appeal to the conscience of a court of equity.'' (*Huston* v. *Vollenweider*, 101 Mont. 156, 53 Pac. (2d) 112, 115; see, also, numerous other Montana cases therein cited.)

The case of the defendant vendee, in respect to relief against the forfeiture, appeals to us as meritorious. The purchase was made at a time when money for private investment was not readily available, in fact was difficult to obtain. Existing land purchase contracts were abandoned and few new contracts were made. Tax delinquencies were the rule. These things did not come about because of the sheer gross negligence of debtors, vendees and property owners. They resulted from money conditions over which the average small investor and businessman had no control. While the vendee was in default, it occurred under circumstances such that we cannot see that he was negligent to the degree which would bar him from consideration. He had, during the four years following the making of the contract, paid nearly half of the principal and some interest. The tender made would constitute full performance so as to entitle the vendee to deed of conveyance. To the vendor it would give all that the contract called for, with no loss because of delay, and would constitute full compensation. With the county as the vendor, its only interest was to complete the sale and get the land into

private ownership and on the tax rolls. The only possible loss to the county by reason of the delay would be the loss of the use of the money. This would be fully compensated for by the payment of interest which was tendered. There are no circumstances which would render it unjust or inequitable to grant the relief. (66 C. J. 789, 790.)

With the payment period specified in the contract long expired, the contract relation between the parties is not the same. While the obligation to pay remains, the provision for forfeiture in event of default no longer serves. (66 C. J. 785, sec. 385.) The vendor may sue to collect the remainder of the purchase price. The right to rescind may be revived, but only after notice of intention to resort to such remedy with reasonable time first to the vendee to perform. What is reasonable notice will of course depend upon the circumstances in each case. Where there had been successive defaults with implied waiver of the right of forfeiture throughout the entire payment extension period under the contract, and long after, the time that was here given by the notice to establish ground of forfeiture seems to us wholly inadequate.

It must be that the trial court took the view the contract had not been cancelled and was still in existence on the day of trial. The court's finding of the fact that a tender of payment was made must have followed a finding that there still was a contract. Without a contract, a tender of payment would not have been material to any issue before the court because there would have been no contract to which the tender would apply. That is the case presented to this court on the record before us.

Section 8658, Revised Codes, was enacted for the benefit of obligors whose failure to punctually perform would result in loss to them in the matters in respect to which they have contracted. The intention of the legislature in enacting the statute was that it should be operative and that it should be given full force and effect when the circumstances in any case gave it application. The intention of the law under this statute is that a forfeiture should not be needlessly enforced. The courts have established

418

that as the policy of the law in the absence of statute. The rule as it has found expression in court decisions generally is that both in law and in equity forfeitures are abhorred. Under the circumstances in the instant case, existing at the time of the tender, we can see no reason why a forfeiture should be declared. (*Rynhart v. Welch*, 156 Or. 48, 65 Pac. (2d) 1420; *Schnitz v. Grand River, etc., Co.*, 271 Mich. 253, 259 N. W. 900; *Grider v. Turnbow*, 162 Or. 622, 94 Pac. (2d) 285, 292; *Young v. Fitts*, 138 Tex. 136, 157 S. W. (2d) 873; *West Lumber Co. v. Henderson*, (Tex. Civ. App.), 238 S. W. 710, 714, *Seaboard Bank, etc. v. Amuny*, (Tex. Civ. App.), 6 S. W. (2d) 186.)

Our view is that the tender of payment offered by the vendee on the day of trial should have been accepted and the county required to execute conveyance for the reason (1) that there never had been a valid cancellation of the contract at the time the tender was made, and (2) that the forfeiture sought to be enforced by the county as a necessary adjudication to maintain its position under the issues that arose in the case should have been denied.

The instant case is distinguished from other decisions by this court wherein the vendee, in default of payment, was denied relief against forfeiture. In the case of *Suburban Homes Co. v. North*, 50 Mont. 108, 145 Pac. (2d) 6, Ann. Cas. 1917C, 81, one of the leading cases, the court points out the failure of the vendee to make tender of performance at any time, even on the day of trial, as of controlling importance in the judgment of the court. Speaking of that phase of the case, the court in its opinion, says: ''In view of the failure of defendant to respond to the demand of the plaintiff, as well as his failure to tender payment at the trial and demand a conveyance, the conclusion seems inevitable that he is either unwilling, or, more probably, unable, to meet his obligations under the contract. Such being the case, he is in no position to claim that the plaintiff ought to be denied relief.'' This statement by the court is pregnant with the statement that had tender of performance been made even the day of trial, as was done in the instant case, the vendee would have furnished

ground for seeking relief which the court would have been justified in granting.

Plaintiff makes the contention that deferred payments in ▉ county contracts for the sale of real estate may not extend over a period of more than five years because of the provisions of sections 2235 and 4465.9, Revised Codes, and that the county commissioners therefore were without authority to deal with the vendee under the contract as still in force after the five-year period. Also, it is contended that because of provisions of section 2208.1, Revised Codes, the tax delinquencies automatically cancelled the contract.

Sections 2235 and 4465.9, Revised Codes, provide that in contracts made by the county, for the sale of any real estate it may own, deferred payments may not extend over a period of more than five years. This limits the deferred payment period which the county commissioners may provide for in such contracts. It does not mean that at the end of such period of time the contract and property rights of the vendee thereunder shall necessarily all be lost if the purchase price has not all been paid during such five-year period. After the five-year period, if there still remain a part of the purchase price unpaid and the vendee offers payment thereof, such payment may be accepted—and this, without any violation of the provisions of sections 2235 and 4465.9.

Section 2208.1, Revised Codes, relating to disposal of tax title ▉ ▉ property held by the county, provides that if any tax delinquency occurs in respect to any such land sold by the county on installment contract, the failure to pay the tax shall automatically cancel the contract. This provision, read into such a contract as part of the agreement, could not take from a court of equity the power to relieve against a forfeiture resulting. As a tax collecting measure allowing no redemption period, it is void as class legislation, singling out a class of property owners to be dealt with more harshly than all others.

The cause is remanded, with directions that if appellant shall, within thirty days from the filing of remittitur, deposit with the clerk of the court for the use of respondent the full amount of

purchase price owing under the sale contract with interest thereon to the time of deposit, and also all taxes assessed against the said land and remaining unpaid, judgment shall then be entered in favor of the appellant directing the respondent to receive the money so deposited and to execute and deliver to the appellant a deed of conveyance of the said land; if such deposit is not made within the said thirty-day period, the judgment appealed from shall stand as affirmed.

MR. JUSTICE ADAIR concurs.

MR. JUSTICE MORRIS:

I concur in the result of the foregoing opinion by MR. JUSTICE ANDERSON. The county gets all it contracted for in the beginning and equity does not favor forfeitures. I think the provisions of section 9191, Revised Codes, justify the relief we have given the defendant, in spite of the technical defects in his proceedings and the weakness of his defense.

MR. JUSTICE ERICKSON:

I dissent. Historically this court has adhered to the rule that it will presume that the rulings and judgment of the trial court are correct unless the record shows affirmative error, and that is particularly true in a case such as we have here, where the record is not before us. In *Ringling* v. *Smith River Development Co.*, 48 Mont. 467, 138 Pac. 1098, after stating the general rule, we said: "In the absence of any evidence disclosing the circumstances under which the securities were given, * * * and, indeed, in the absence of the writing assigning either the contract or the option, *appellant must assume the burden of showing that the trial court's conclusion is erroneous under any possible state of facts consistent with the declaration of the record* that by an instrument in writing, duly executed by it, the defendant assigned, transferred, and delivered the contract in the one instance, and the option in the other, as collateral security for the payment of a debt."

A few of the more than fifty cases stating the duty of this court to approach consideration of a case with this presump-

tion in mind are: *Toole* v. *Weirick,* 39 Mont. 359, 102 Pac. 590, 133 Am. St. Rep. 576; *Smith* v. *Collis,* 42 Mont. 350, 112 Pac. 1070, Ann. Cas. 1912A, 1158; *Gilna* v. *Barker,* 78 Mont. 357, 254 Pac. 174; *Mulholland* v. *Butte & Superior Mining Co.,* 87 Mont. 561, 289 Pac. 574; *State ex rel. Wentworth* v. *Baker,* 101 Mont. 226, 53 Pac. (2d) 440.

Over and over again we have said, as we did in *Ringling* v. *Smith River Development Co.,* supra, that when the record on appeal does not present the evidence taken below the presumption is that there was evidence sustaining the findings. In *McBride* v. *School Dist. No. 2,* 88 Mont. 110, 290 Pac. 252, 254, we said, ''a transcript of the evidence not being before us, we must assume that the proof was ample to support it, and that, if it is not supported by the pleadings, they were deemed amended to conform to the proof.'' A few of the many cases in which we have affirmed what was said in *McBride* v. *School Dist. No. 2,* supra, are *In re Baxter's Estate,* 98 Mont. 291, 39 Pac. (2d) 186; *Smith* v. *Rodriguez,* 69 Mont. 319, 221 Pac. 530. This long standing rule is completely ignored by the majority here and it proceeds contrary to that rule.

We have here a simple action seeking to quiet title to real estate. To reach the result it has, the court indulged in two violent assumptions. First, the majority opinion says: ''Defendant's prayer in effect asks for relief against forfeiture.'' Second, it makes the following assumption which is directly contrary to the specific finding of the trial judge: ''It must be that the trial court took the view the contract had not been cancelled and was still in existence on the day of the trial.'' This assumption the majority bases upon the finding of the trial court that tender was made in court by the defendant. Without the specific finding of the court to the contrary on this matter of cancellation one might stretch this finding sufficiently so as to allow the assumption to be made, but in face of the fact of the conclusion of the trial court that ''* * * defendant, John Wight breached said contract and thereby terminated the same,'' the assumption of the majority cannot be justified.

First let us see whether the pleadings on the part of the defendant were in effect a prayer for relief from forfeiture. In the absence of any pleadings which have for the purpose excusing non-compliance with the terms of the contract, defendant may not take advantage of the provisions of section 8658, Revised Codes. In *Fratt* v. *Daniels-Jones Co.*, 47 Mont. 487, 133 Pac. 700, 703, this court said: ''Whatever may be the correct interpretation of the language of that section [8658], this much is apparent: the very minimum requirement is that the party invoking the protection afforded by that section must set forth facts [in his pleadings] which will appeal to the conscience of a court of equity.'' We have said over and over again that the one seeking relief from a forfeiture under section 8658, Revised Codes, must set out in his pleadings specific allegations of ultimate fact to show that he has not been guilty of a grossly negligent, wilful or fraudulent breach of his duty under the contract.

In *Suburban Homes Co.* v. *North*, 50 Mont. 108, 145 Pac. 2, 4, Ann. Cas. 1917C, 81, we held that one seeking relief under section 8658, Revised Codes, cannot do so unless ''he can allege and prove that the default was not the result of his 'grossly negligent, willful or fraudulent breach of duty.' '' (See, also, *Ellinghouse* v. *Hansen Packing Co.*, 66 Mont. 444, 213 Pac. 1087; *Huffine* v. *Lincoln*, 87 Mont. 267, 287 Pac. 629; *Donlan* v. *Arnold*, 48 Mont. 416, 138 Pac. 775; *Clifton* v. *Willson*, 47 Mont. 305, 132 Pac. 424; *Estabrook* v. *Sonstelie*, 86 Mont. 435, 284 Pac. 147; *Huston* v. *Vollenweider*, 101 Mont. 156, 53 Pac. (2d) 112.)

Let us see whether defendant's answer contains in it anywhere and by any stretch of the imagination any pleading which excuses in any way his failure to perform as he had agreed to do in his contract with the county. After denying the title of the plaintiff, the defendants allege ''that they are the owners'' and are in possession of the property under ''a contract of sale and purchase * * * and that said contract is now in full force and effect.'' The defendants then pray that ''their rights of title * * * be adjudged and decreed by the court to be in full force and effect, and that through it defendants have the equitable title

\* \* \*. That the court ascertain what sum, if any, may be due plaintiff under said contract and if it be found there be due to plaintiff any amount under said contract defendants be given a reasonable time \* \* \* within which to make payment thereof and to secure to themselves, or their assigns, deed thereto from plaintiff.'' What I have quoted sets out the entire material allegations of the answer. No argument is necessary to show that it fails utterly to excuse non-performance of their contract obligation by the defendants, and how the majority can assume that this constitutes a prayer for relief under section 8658, Revised Codes, or that it is sufficient to warrant any discussion of that section by the court, I cannot comprehend.

But even if we do make such an assumption, how can we be justified in the absence of the record in assuming that any showing was made as required that the defendant was not guilty of a grossly negligent, wilful or fraudulent breach of his duty under the contract? The majority discourse at some length on general economic conditions throughout the country from 1935 to 1940. On the basis of that they indulge the presumption that the defendant was ready, willing and anxious to perform his obligations under the contract but that he was unable to do so. To put the trial court in error on such a presumption to me cannot be justified. If we do grant that the trial court had the right to consider giving this defendant any relief under section 8658, certainly under the cases cited we ought to presume that from the facts shown the trial court was forced to the conclusion that the defendants had not excused non-performance.

Upon the basis of its second assumption, the majority works out a theory that the county had waived its right to cancel the contract because of the defendant's failure to make the payments called for therein, even though the contract provided that time was to be of the essence. To a certain extent the majority proceeds correctly in its discussion of this matter. There can be no doubt but that the failure of the county to enforce the contract provision requiring payment on certain dates waived for the time being the provision making time of the essence, but the granting

of indulgence to this defendant did not operate to destroy entirely this provision and it could be reinstated upon notice to the defendant.

In discussing this matter we said in *Suburban Homes Co.* v. *North*, supra, "Where the indulgence has been extended until long after all the installments are due, nonpayment alone will not justify a forfeiture. * * * But, though the vendor has extended indulgence to the vendee, he is not required to wait indefinitely for the vendee to perform his obligation. If the latter continues in default, the vendor, by demand for payment of the balance of the purchase money and notice of his purpose to terminate the contract in case of further default, may put the vendee upon his guard. If after such notice he does not make payment within a reasonable time, the vendor may declare the contract at an end." Here within a year after the final payment became due, the county served a notice after an appropriate resolution to the defendant requiring him to pay up under the contract within thirty days and that if he did not do so the contract would be cancelled. Several days elapsed after the end of that thirty-day period before any action was taken by the county by resolution, cancelling the contract. This brings the case squarely within what is said in *Suburban Homes Co.* v. *North*, supra. The notice was given demanding payment and declaring intention, in the event payment was not made, to cancel the contract. Whether or not the time given, thirty days, as stated in the notice, and some eighteen days before cancellation was had, was a reasonable time was a matter peculiarly within the discretion of the trial judge. Whether that time was reasonable would depend upon all of the circumstances, and particularly whether or not defendant was in a condition to make the payments. None of these things is before us, and certainly we should adhere to the rule as stated in *Ringling* v. *Smith River Development Co.*, supra, and the cases cited at the beginning of this dissenting opinion, and presume that the defendant failed to show to the trial judge that the time granted was not reasonable.

Finally the majority discusses at some length the proposition

that no matter what were the reasons for the defendant's default and no matter how wilful, grossly negligent or fraudulent his conduct might have been in breaching his duty under the contract, still we must reverse the trial judge and hold for the defendant for the reason that now, some seven years after the defendant was first in default, he comes in and tenders the full amount of what he agreed to pay together with interest and the taxes, and that therefore the county has suffered no loss. On the basis of this reasoning and without so much as mentioning the maxim that he who seeks the aid of equity must do equity, and that he who seeks the aid of equity must come into court with clean hands, the majority orders specific performance of a contract which has been cancelled more than two years. On the question of when specific performance may be decreed, see generally: Sec. 8722, Rev. Codes; *In re Grogan's Estate,* 38 Mont. 540, 100 Pac. 1044; *Montana Water Co.* v. *City of Billings,* D. C., 214 Fed. 121; *Wenham* v. *Switzer,* C. C., 51 Fed. 351; Pomeroy, Equity Jur. (1941) Sec. 1407, page 1050, and cases cited thereunder. I doubt very much that the majority would apply this reasoning to a case in which the seller was an individual rather than a county. I cannot understand the creation of one rule to be applied to public bodies and another to private individuals. This reasoning might be invoked where the record showed affirmatively that the defendant's failure to, perform was through no fault of his own, but in the absence of anything to show any equities in favor of this defendant, who for all we may know may have been a speculator who purchased this land originally for the purpose of speculating and who could have performed his obligation under the contract, I cannot see any justification for affording him relief on this basis and this basis alone.

I want to repeat in conclusion that the majority in order to reach the result it has, has made the assumptions above pointed out that are contrary to the facts appearing in the judgment roll. Further, even though these assumptions were justified, which is not the case, they would not warrant a reversal of the trial court.

In order to reach the conclusion it has, the majority has had to go further and ignore completely, and in effect overrule, the many, many cases requiring this court particularly in an equity action, and more particularly in the absence of the record, to presume that the findings of the trial court are supported by the evidence where the evidence is not before us, and to presume that its judgment is correct.

I think the judgment should be affirmed.

MR. CHIEF JUSTICE JOHNSON:

I concur in the above dissent of Mr. Justice Erickson. However, I find it necessary to add something further in view of the confusion exhibited by the majority opinion as to the nature of the suit and the issues involved. Under our judicial system appellate courts are supposed to do more than merely settle the rights of the parties to the instant case, and the bar is entitled to know what this court considers the issues and the law relevant thereto.

After correctly stating that this is a quiet title action, the majority opinion goes on to speak of equitable relief from forfeiture under section 8658, Revised Codes. I shall not here comment upon the majority opinion's manifest confusion between (1) the relief provided by section 8658 against the forfeiture of payments resulting from Wight's default under his purchase contract and (2) a relief against the agreed termination or cancellation of the contract on account of those defaults, which is a quite different thing and for which in my opinion other authority than that section must be found. I believe that this court's decision, written by Mr. Chief Justice Brantly, in *Suburban Homes Co.* v. *North*, 50 Mont. 108, 145 Pac. 2, Ann. Cas. 1917C, 81, makes the distinction amply clear.

What I want to clarify here is the apparent confusion between quiet title actions and actions for affirmative relief. The purpose of the latter is obviously to change the rights of the parties by giving one of them affirmative relief against a present legal right of the other. But the purpose of a quiet title action is not to

reverse or alter the rights of the parties, or to declare them otherwise than what they are under *existing* facts and laws; it is for the purposes of examining the actual or possible claims of any adverse claimants, "determining such claim or possible claim, and quieting the title" as against it. (Sec. 9479, Rev. Codes.) It is aimed solely at the pretentions of individuals claiming adversely (*Slette* v. *Review Pub. Co.*, 71 Mont. 518, 230 Pac. 580) and seeks to adjudicate their validity, not to alter them. The complaint here, being one to quiet title, does not seek to terminate any valid rights of the vendee, but merely to determine whether he has any rights and, if not, to silence his claims. Likewise, the answer does not seek to extend or renew defendants' rights under the contract but merely to determine if they have any and if so to silence plaintiff's claims to the contrary.

It is, of course, possible to change the issues of a suit by evidence admitted without objection. If in this instance they have been changed the bar is entitled to know the basis upon which the case was determined by this court. Certainly the bar has no way of ascertaining that basis from the majority opinion, which holds that the contract has never been terminated but is still in effect, and then speaks of a relief from forfeiture, obviously meaning relief against the termination of the contract. It is obviously contradictory to adjudge in the same decision (1) that a contract has not been terminated, and (2) that there has been a termination against which relief should be granted.

As the majority opinion correctly points out, the pleadings make this purely a quiet title suit. Plaintiff county alleges title in itself and a groundless adverse claim by defendants, and seeks an adjudication quieting its title as against them. Defendants in their answer deny plaintiff's title, assert title in themselves and seek to have the latter quieted against plaintiff. It is true that they plead that their title is "under a contract of sale and purchase * * * made by plaintiff as vendor to defendant, John Wight, as vendee, dated November 3, 1934, and that said contract is now in full force and effect."

For present purposes it is unnecessary to discuss the fact that

the entire reference to the contract is purely by way of conclusion of law, since the contract itself is not pleaded either in full or according to its legal effect, (sec. 9172, Rev. Codes), and no facts are pleaded to show what defendant's claimed rights under the contract are or that the contract is still legally effective. The reference to the contract shows that in spite of defendants' denial of plaintiff's title, the defendants mean to assert an equitable title under plaintiff's contract of sale, and that they therefore rely affirmatively upon plaintiff's legal title and ask only that their equitable title be quieted as against it; in other words, that it be determined by the court that the contract, and therefore their equitable interest under it, are in full force and effect. Thus the answer seeks merely an adjudication of the title as defendants contend it actually to be, rather than any affirmative relief against the title as it actually is. The prayer makes this clear in asking that the court adjudicate their rights "to be in full force and effect and through it [the contract?] defendants to have the equitable title to the said land and premises;" and in asking that the court determine the amount, if any, due plaintiff. What is thus sought is not a change in the status of the parties under the contract, but merely an adjudication of that status and of the sum still due, if any, under an allegedly subsisting contract; which is within the proper function of a quiet title suit, since the extent of the asserted equitable interest, if any, and therefore the corresponding limitation of plaintiff's legal interest, must be determined in order to declare the status of the title as it actually exists.

It is true that the prayer goes on to ask that they be "given *a reasonable time * * * within which to make payment * * *.*" That part of the prayer obviously does ask for affirmative relief, namely the extension of the contract granting time in addition to that given by it. In other words, the only affirmative relief sought was not the reinstatement of the terminated contract, but the extension of one allegedly then existing.

It is well settled that the prayer is no part of the statement of facts in the pleading (*Donovan* v. *McDevitt*, 36 Mont. 61, 92

Pac. 49) and that it cannot enlarge the relief warranted by that statement of facts (*Murray* v. *Cresse,* 80 Mont. 453, 260 Pac. 1051, and other cases cited in the American Digest System, Pleading, Key 72). The answer itself alleges only title under a contract, and seeks an adjudication that the equitable title be found good as against plaintiff.

In any event, therefore, the answer does not alter the fact that the action is merely a quiet title suit; and even if the issues could have been enlarged by its prayer, the only additional relief thus sought was the extension by the court of an allegedly valid contract, and not the restoration to validity of a contract voided under its own terms by Wight's defaults.

While, as stated above, it is possible to change or enlarge the issues of an action by evidence admitted without objection, we have no way of telling, in the absence of a bill of exceptions, what the evidence was or what it may have accomplished in that respect. It is therefore necessarily the rule under the authorities mentioned in the dissenting opinion of Mr. Justice Erickson that we must presume the findings necessary to sustain the judgment, even though such evidence might have been inadmissible under the pleadings, or even directly contrary to them. However, even to sustain the judgment we may presume only findings which are not inconsistent with the express findings, since we cannot presume the exact opposite of what the court expressly did. Yet that is exactly what the majority opinion does in order to reverse the judgment.

An examination of the findings of fact and conclusions of law, which with the pleadings constitute the entire record, discloses the express findings that on November 5, 1934, plaintiff owned the property and made a contract to sell it to defendant, John Wight, upon a partial payment contract which expressly made time of the essence and provided that the contract should be terminated and defendants' prior payments and improvements forfeited automatically upon default in his payment of the taxes, principal or interest; that Wight defaulted in the contract and in the payment of principal, interest and taxes; that the plain-

tiff's board of county commissioners by resolution on July 30, 1940, declared the contract in default and expressed an intention to cancel it unless fully complied with by August 31, 1940; that notice thereof was given Wight, but that he failed and neglected to comply; that on September 17, 1940, the board by resolution declared the contract cancelled and that notice thereof was given Wight two days later and acknowledged by him; that at the trial he tendered the full amount of principal, interest and taxes.

The conclusions of law were that Wight breached the contract and thereby terminated it and released plaintiff from all obligation thereunder; that the property and improvements and all payments made by Wight were therefore the property of plaintiff, and that plaintiff was entitled to a decree quieting its title as against the defendant's claims.

Thus the findings and conclusions show affirmatively that the issues were not changed by the evidence, and that the court merely found that the contract had been terminated under its own provisions because of defendant John Wight's defaults and that defendants' claim of right under the contract was not good as against the plaintiff. In other words, the action concluded as it had begun, purely a quiet title suit.

As stated above, the theory of defendants' case, and therefore the basis for the tender at trial, was that the contract was still in full effect. Their theory has never changed. They say in their appeal brief, ''We insist and contend that the defendants had a property right in the land in question which they could not be deprived of by notice of cancellation;'' that the contract conferred upon them an equitable title which, under section 10611, Revised Codes, could be divested only by a subsequent instrument in writing subscribed by them or by operation of law; that the circumstances could not constitute ''operation of law;'' that the only way by which a contract can be cancelled, regardless of its terms, is by a court judgment for that purpose; that without such legal adjudication the defendants ''did not have a day in court;'' that ''courts should do more than rubber stamp notices of cancellation of this sort with a judicial O. K. The * * * trial

court simply found that defendants' equitable estate in the land was extinguished by the act of plaintiff. Our idea of a day in court is to have the court enter judgment determining the rights of the parties to the contract as in *Henderson* v. *Daniels,* supra [62 Mont. 363, 205 Pac. 964], not to hold a sort of coroner's inquest over the victim after the deed was completed.''

I do not propose to discuss this revolutionary contention that regardless of its terms every contract relating to property vests an interest in the vendee which can be divested only by a subsequent writing signed by him or by the judgment of a court of law. It may not be inappropriate to point out that a quiet title suit, though not a coroner's inquest, is nevertheless an inquest into the situation as it exists, rather than a means of obtaining affirmative relief against that situation. But what I want to point out here is that this action was not changed by the evidence into one for relief against the termination of the contract, or even against a forfeiture under the contract; that the defendants have contended throughout and still contend that there has been no termination of the contract and that there can be none until the court has so adjudicated, that the contract is therefore still in effect, and that accordingly they still have the legal right to tender payment and receive a deed; that is clearly the theory on which the tender was made at the trial, and it is likewise clear that the court mentioned the tender in its findings because if the defendants' contentions should be sustained by this court such tender would be necessary to preserve defendants' rights, as held in *Suburban Homes Co.* v. *North,* supra.

As noted above, the court made the express findings that the contract provided that time was of the essence and that the vendee's defaults would automatically terminate the contract, that although the vendor repeatedly waived defaults, it finally gave the vendee warning of termination, which he ignored; and the court made the conclusion of law ''that the defendant, John Wight, breached said contract and thereby *terminated* the same.'' It naturally follows from the court's conclusion that since the contract had been terminated the tender came too late. Yet the

majority opinion says "It *must* be that the trial court took the view the contract had *not* been cancelled and was still in existence on the day of trial. The court's finding of fact that a tender of payment was made must have followed a finding that there was still a contract. Without a contract a tender of payment would not have been made material to any issue before the court because there would have been no contract to which the tender would apply. That is the case presented to this court on the record before us."

It is submitted that the above is an entirely unique use of the inductive method to prove that the court must have done the exact opposite of what it manifestly did do, and thereby, in order to reverse a decree fully supported by the express findings of fact and conclusions of law, to presume findings and conclusions directly contrary to and inconsistent with those expressly made. I have seen no similar holding and expect never to see another.

The majority opinion's conclusion upon this point, entirely without statement of reason, argument or precedent, is that the tender made at the trial was valid because "there never had been a valid cancellation of the contract at the time the tender was made." In other words, contrary to the terms of the contract, and contrary to the law of contracts, and contrary to the express findings of fact made by the trial court on evidence not before us, and contrary to the conclusions of law which were amply sustained by the express findings of fact, to say nothing of findings which if necessary to sustain the judgment this court must presume;—contrary to all of these things the majority states upon its bare *ipse dixit* that the contract was still in effect and the tender therefore timely. One wonders why, if the terms of the contract as agreed to between the parties are so utterly immaterial to the determination of their rights, they should go to the trouble of stating the conditions at all. It would seem that they need only name the parties, the subject matter and the price, and leave everything else, including the duration of the contract, to the courts.

But the majority opinion does not even stop there. Although it finds that there has been no termination of the contract (and therefore no forfeiture, which is only a result of the termination, as pointed out by Mr. Chief Justice Brantly in the *North case,* supra), the greater part of the opinion discusses relief against forfeiture under section 8658, which with substantial but obviously mistaken authority in precedent it assumes synonymous with relief from the termination itself. The opinion states that "defendants' prayer in effect asks for relief against forfeiture." I have already pointed out that the facts are entirely otherwise and that in any event it is immaterial what the prayer asks for in the absence of appropriate allegations in the answer itself. After quoting section 8658, which authorizes relief from *forfeiture* "upon making full compensation to the other party, except in case of a grossly negligent, wilful, or fraudulent breach of duty," the majority opinion quotes this court's statement in *Huston* v. *Vollenweider,* 101 Mont. 156, 53 Pac. (2d) 112, 115, that a person is entitled to that relief "in any case *where he sets forth facts* which appeal to the conscience of the court of equity," although such statement of facts is conspicuous by its utter absence in this case.

Thus, in spite of the fact that the majority opinion expressly finds that there has been no termination and therefore no forfeiture, it treats section 8658 as applicable. And in spite of the fact that the evidence is not before us, the opinion states flatly "there are no circumstances which would render it unjust or inequitable to grant the relief" (apparently meaning the unsought relief against the termination which the defendants and the majority opinion pronounce non-existent). The discussion of the supposed facts is contained in the same paragraph and includes the statement that the county, and not an individual, is the vendor, and that *"the purchase was made* at a time when money for private investment * * * was difficult to obtain." As to the first point, I know of no reason why a county is less entitled to its contractual and statutory rights than an individual. As to the latter point, it may explain why the county, under legis-

lative authorization, gave the defendant a partial payment contract and why he accepted it, presumably with full knowledge of then existing conditions. But the depression existing *when the purchase was made* in 1934 does not explain why he committed the defaults in 1935, 1936, 1937, 1938, 1939 and 1940 or why, long after the conditions had changed, the defendant in spite of his continued and repeated defaults and the contract's express terms, should be entitled to complete the purchase as late as the trial of the case in June, 1942, nearly eight years later, or at any time after the termination of the contract in September, 1940.

The majority opinion goes on to say "While the vendee was in default, it occurred under circumstances such as *we cannot see* that he is negligent to the degree which would bar him from consideration. * * * There are no circumstances which would render it unjust or inequitable to grant the relief." The proper test is not whether we *cannot* see that he is negligent; it is whether we *can* see that the trial court erred in not seeing that Wight was not negligent. But we cannot apply either test, for the circumstances of the many defaults are not before this court; and in view of the issues as disclosed by the pleadings, the findings of fact, the conclusions of law, the decree, and the defendants" appeal brief, which issues made those circumstances entirely immaterial, we cannot even conjecture that they were before the trial court or that it can possibly be in error concerning them. The record offers no scintilla of a suggestion how the trial court can be in error in that respect.

The opinion further says "The tender made would constitute *full performance* so as to entitle the vendee to deed of conveyance. To the vendor it would give all that the contract called for, with no loss because of delay, and would constitute full compensation. With the county as the vendor, its only interest was to complete the sale and get the land into private ownership and on the tax rolls. The only possible loss to the county by reason of the delay would be the loss of the use of the money. This would be fully compensated for by the payment of interest which was tendered."

Since the statutory requirement is not *full performance* of the cancelled contract but *full compensation* for the defaults, the principle thus announced is, that no matter what the terms of the contract may be, or how long it has been void, or what the unknown prior or subsequent circumstances may be, and regardless of the present value of the property, a tender of the balance of the original contract amount with interest will constitute *full compensation* to the vendor.

In the first place, it is not true that the county's only interest is to dispose of the property regardless of its value. The property belongs to the public as represented by the county, a subdivision of the state, and cannot be given away, in whole or in part. "Neither the state, nor any county, * * * shall ever * * * make any donation or grant, by subsidy or otherwise, to any individual, * * *." (Art. XIII, sec. 1, Constitution of Montana.)

Upon the termination of the contract by the board of county commissioners on September 17, 1940, the county's property was entirely freed from the defendants' claim under the contract, whether or not under section 8658 the defendants might by proper allegations be able to make out a case for relief against the forfeiture of their payments. Certainly that section cannot, as against the constitutional inhibition above quoted, authorize either the county board or the courts to donate back to defendant John Wight even the forfeited payments without appropriate pleadings and proof, assuming that it can constitutionally authorize an orderly adjudication therefor under due process of law. Surely it may not constitutionally do so as to the land, the county's ownership of which, free from the terminated contract, cannot seriously be questioned.

What the public owns is not the value placed upon the land at or near the depth of the depression in 1934, of which the majority take judicial notice, but the land itself, whatever its value may be, on and after the termination of the contract in 1940. There can be no authority compelling a private owner to sell his property at the price set in an expired contract, even if it can be proved that the market value has not risen meantime, for that

would constitute a taking without due process. Assuming that the Legislature might constitutionally so provide in the case of public property, it has not done so.

It may be that neither general circumstances nor oil or gas discoveries, indications or possibilities have increased the value of the land. But the defendants' changing attitude suggests that there has been some such change. There was never a time after November 5, 1935, that the defendant John Wight was not in default under the contract; he took no action upon the notice of intention to terminate the contract in August, 1940, or upon the notice of termination in September. Even when he filed his answer on January 11, 1941, he made no tender, offer or expression of intention to complete the purchase. Not even in the prayer of the answer did he do so; he merely asked the court to adjudge the contract in effect, to determine the balance due, and to grant him an extension of the time for payment, without even a suggestion of any promise or intention to pay. Certainly the circumstances justify at least the suspicion that after five years of continued default he was merely stalling for still more time. It was not until a year and a half later, at the trial on July 7, 1942, that the tender was first made. Certainly so far as the record indicates, if the equities are not all against him, they are at least not so manifestly in his favor that the trial court can properly be placed in error.

To conclude upon such a record, and in entire ignorance of the facts, that performance of the original contract several years after its termination will constitute full compensation for relief, not only against a forfeiture under the contract, but also against the cancellation of the contract, is utterly impossible. Every contract, regardless of its terms, may under that argument, and regardless of pleadings, evidence and equities, be revived and enforced long after its termination. It is incomprehensible to me how, in such a state of the law, any owner can safely grant a contract or option for purchase. Yet this decision not only determines the rights of the parties here, but lays down a rule for guidance in future cases.

In this state of the record, assuming that section 8658 is applicable and authorizes relief from terminations as well as forfeitures, it is incomprehensible to me how this court can conclude that the trial court erred in not deciding (1) that the defendants have not been guilty of "grossly negligent, wilful or fraudulent breach of duty" under the contract, and (2) that a tender of the principal, interest and taxes under the long expired contract, much of it seven years overdue and all of it nearly four years overdue at the time of trial, constitutes "full compensation to the other party." In this connection it should be noted again that the statutory requirement is not the full, though grossly belated, performance of the original contract; the requirement is "full compensation to the other party," which is entirely different in view of the fact that the value of the latter's property, which is free from the terminated contract, can no longer be measured by the terms of that contract as made by the parties nearly eight years before.

The full facts, if known, might possibly justify defendants' relief from the forfeiture of payments and improvements resulting from the cancellation; but since the defendants have not sought even that remedy, and apparently have not submitted the applicable facts even to the trial court, we have no ground for pronouncing the trial court in error, or for trying the question ourselves.

Many other things are said in the majority opinion which might well be commented upon, but I shall mention only one or two of them. One is the comment toward the end of the opinion relative to this court's decision in *Suburban Homes Co.* v. *North,* supra. I am unable to discern any such pregnancy in the language quoted.

Certain casual rulings are thrown in concerning sections 2208.1, 2235 and 4465.9 of the Codes, which may or may not be correct with reference to cases in which they might be material. Since the record does not show that the land in question is tax title property, sections 2208.1 and 2235 are not even remotely in point. I particularly dissent from the cursory statement pro-

438

nouncing unconstitutional as class legislation, without argument or citation of authority, the requirement of section 2208.1 that contracts for the sale of *tax title property* shall automatically become cancelled upon vendee's failure to pay taxes when due. Not only do I dissent from the ground stated; but it is not my understanding that we should pass upon a question of constitutionality which is not necessary to the decision of the instant case. All that could properly have been said about the section is that under the record it does not appear pertinent to the issues.

Mr. Justice Erickson has authorized me to state that he concurs in this further dissent.

Rehearing denied February 21, 1944.