No. 81-448

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

---

STANLEY J. ROBERTS and DONNA J.
ROBERTS,

        Plaintiffs and Appellants,

    -vs-

MARY JANE MORIN,

        Defendant and Respondent.

---

Appeal from: District Court of the Fourth Judicial District,
In and for the County of Missoula, The Honorable
Jack L. Green, Judge presiding.

Counsel of Record:

    For Appellant:

        Jeffrey H. Langton, Hamilton, Montana

    For Respondent:

        Morales, Volinkaty & Harr, Missoula, Montana

---

Submitted on Briefs: January 14, 1982

Decided: May 13, 1982

Filed: MAY 13 1982

Thomas J. Kearney
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

Appellants, Stanley and Donna Roberts, brought this suit in the District Court of the Fourth Judicial District, in and for the County of Missoula, to obtain relief from the forfeiture of their real estate contract with respondent, Mary Jane Morin, or, in the alternative, to obtain damages for breach of that contract. After a nonjury trial, the District Court entered judgment in favor of Morin and awarded her the property and attorney fees in the amount requested. The court thereafter entered an amended judgment giving the Robertses a credit for expenses incurred in making improvements to the property while they were in possession. The Robertses appeal from the amended judgment.

Morin's predecessor, Morin Lumber Company, originally sold the subject property in 1974 to a Mr. Woolhiser by a contract for deed. The sales price was $9,500. A downpayment of $800 was made, leaving a balance of $8,900 payable at 8% interest in monthly installments of $72.78 until September 20, 1982, at which time the full balance, including interest, was to become due.

The contract provided, in part, that in the event of buyer's breach and continuance of the breach for sixty days following written notice of breach mailed, "to the buyer at 1318 Defoe Street, Missoula, Montana, return receipt requested, or such other address as the buyer shall provide to the seller from time to time," the seller could, at his option, declare a forfeiture and retake possession of the property or pursue all other remedies available at law.

The contract also provided that the prevailing party in any litigation would be entitled to attorney fees and

costs of suit and that no assignment would be permitted without the seller's written consent.

Not long after Woolhiser entered into the contract, he assigned his interest to Albert and Emma Roberts, the parents of Stanley Roberts. The assignment was consented to by Morin Lumber Company. Later, in December 1976, Albert and Emma Roberts assigned the contract to their son Stanley and his wife Donna. At the time of this assignment, the principle balance due to Morin was $8,299.36. Morin's predecessor consented to this assignment. While appellants owned the property, they resided there and made various improvements, which the court determined to be valued at $4,981.

On October 12, 1977, appellants entered into a contract for the sale of the property to Warren and Kathy Iverson. The contract provided that the Iversons would assume the Robertses' obligations to Morin and that upon completion of the Iversons' obligations to the Robertses, the Robertses would assign their interest in the Morin contract to the Iversons. Pursuant to this agreement an assignment of contract was drawn up to be placed in escrow and a consent to assignment was drawn and signed by Morin and placed in escrow with the assignment. Morin was aware at this time that the Robertses were selling to the Iversons on a separate contract.

Unknown to the Robertses the title company mistakenly filed the assignment of record before delivering the contract and related papers to escrow. Further, the escrow agent of the parties treated the contract as presently assigned and set up separate escrow files for the Roberts-

Iverson contract and the Iverson-Morin contract. The result was that the Iversons made payments through escrow to the Robertses and payments through escrow to Morin.

Personal and financial problems beset the Iversons in 1979, resulting in their separation and falling behind on the escrow payments. The Iversons missed a payment to Morin early in 1979, but no action was taken on the part of Morin to enforce the time of the essence clause in the contract. The Iversons' last payment to Morin was on January 17, 1980. Morin sent a notice of default to the Iversons at 1318 Defoe Street after the Iversons missed their payment. Later, upon expiration of the sixty-day default period, Morin sent a notice of forfeiture to the Iversons at the Defoe Street address and took possession. Meanwhile, the Robertses, though having trouble with the timeliness of the payments from the Iversons, received payments until July 1980.

Morin sent no notice of default or forfeiture to the Robertses, nor did the Iversons inform the Robertses that they had defaulted on the Morin contract until July or August 1980. On August 18, 1980, the Robertses' attorney requested a statement of the balance due from Morin's attorney and offered to cure the default. This offer was rejected. On September 10, 1980, Robertses' attorney sent a written tender of payment to Morin and to her attorney, offering to pay the amount in default and related costs together with interest from the date of the last payment by Iversons to the date of tender, a total of $7,552.61 plus interest, in exchange for a deed from Morin. This offer was rejected, but the amount of the offer was not disputed.

On September 17, 1980, the Robertses commenced suit

to compel Morin to accept their tender and deliver her deed, or for damages. Throughout the proceedings, Robertses have offered to pay the above-stated amount.

The following issues are presented for review:

1. Were the Robertses entitled to notice prior to Morin defaulting the Iverson contract?

2. Once the Robertses had notice of the default and offered to tender full compensation to Morin, should the trial court have denied a forfeiture of the contract?

The first issue presented by appellants is whether they were entitled to notice prior to Morin defaulting the Iverson contract. The contract provides that notice of default be sent to the "buyer" at 1318 Defoe. Morin interpreted this to mean that notice of default had to be sent only to the address of the "buyer" named in the original contract, regardless of the assignments. The problem with this type of notice is that it fails in this situation to take into account the Robertses interest in the property.

Although there is no specific case or statute dealing directly with this situation, there is an analogy in the law that provides a sufficient rationale for notice to be given in this instance. In Chambers v. Cranston (1976), 16 Wash.App. 543, 558 P.2d 271, it was held:

> "The purchaser in an executory real estate contract has an interest which he can mortgage. Sigman v. Stevens-Norton, Inc. 70 Wash.2d 915, 425 P.2d 891 (1967); Nelson v. Bailey, 54 Wash.2d 161, 338 P.2d 757, 73 A.L.R.2d 1400 (1959). If the purchaser has mortgaged his interest, the mortgagee is entitled to notice of forfeiture if the seller knows of the mortgage, and the mortgagee has the right to tender payments to the seller necessary to protect his security, i.e., to keep the contract in effect." 558 P.2d at 273.

See also, MacFadden v. Walker (1971), 97 Cal.Rptr. 537, 488 P.2d 1353.

The situation presented here and the situation presented above are not substantially dissimilar. Here, the Robertses assigned the duty of paying on the Morin contract to the Iversons but did not assign their interest to the Iversons. Further, the Iversons did not "assume" in the strict legal sense the contract of the Robertses but merely agreed, in writing, to pay Morin directly the amount that the Robertses had been initially paying according to their contract assignment. The fact that the assignment was duly recorded by the title company does not affect the intent of the parties, and it has no legal effect on the transaction itself. 66 Am.Jur.2d Records and Recording Laws, sec. 98.

The important similarity lies in the fact that here, as in Chambers, supra, there was a retained interest in the land. In Chambers, the court held that because Citizens Savings and Loan Association was the mortgagee it had ". . . the right to notice of default and to an opportunity to keep the contract in effect . . ." 558 P.2d at 274. The Robertses should have had that same opportunity. They were entitled to a notice of default because they retained an interest, similar to a mortgagee's interest, in the property, and Morin was aware of that interest.

The second issue is whether the trial court should have denied a forfeiture when the Robertses offered to tender full compensation to Morin. A discussion of this issue should be premised with the statement that "equity abhors forfeitures." Yellowstone County v. Wight (1944), 115 Mont. 411, 145 P.2d 516; Sharp v. Holthusen (1980), ____

Mont. ___ , 616 P.2d 374, 37 St.Rep. 1651. Here, there are both statutory and equitable reasons to deny forfeiture of the contract.

Montana has a specific statute dealing with forfeiture. Section 28-1-104, MCA, provides:

> "Relief from forfeiture. Whenever by the terms of an obligation a party thereto incurs a forfeiture or a loss in the nature of a forfeiture by reason of his failure to comply with its provisions, he may be relieved therefrom upon making full compensation to the other party, except in case of a grossly negligent, willful, or fraudulent breach of duty."

This Court has interpreted section 28-1-104, MCA, in numerous cases. In Yellowstone County v. Wight, supra, we held:

> "Section 8658, Revised Codes [now 28-1-104, MCA], was enacted for the benefit of obligors whose failure to punctually perform would result in loss to them in the matters in respect to which they have contracted. The intention of the Legislature in enacting the statute was that it should be operative and that it should be given full force and effect when the circumstances in any case gave it application. The intention of the law under this statute is that a forfeiture should not be needlessly enforced. The courts have established that as the policy of law in the absence of statute. The rule as it has found expression in court decisions generally is that both in law and in equity forfeitures are abhorred." 145 P.2d at 518.

See also, Parrot v. Heller (1976), 171 Mont. 212, 557 P.2d 819, and Sharp v. Holthusen, supra, for a reaffirmation of the above statutory interpretation.

The District Court ruled that the Robertses had not appealed to the conscience of the court and cited section 28-1-104, MCA, and Fratt v. Daniels-Jones (1913), 47 Mont. 487, 133 P. 700, as authority. The Court in Fratt concluded that to invoke the anti-forfeiture statute a party must

appeal to the conscience of a court of equity. While this may indeed be true, the philosophy of the law since the ruling in Fratt has changed dramatically. What appeals to the conscience of a court in equity in 1913 is not necessarily the same as what appeals to the conscience of a court of equity in 1982. In 1913, the legal concept that equity abhors forfeitures was in its infancy. Presently, the concept is one that is considered axiomatic. Under the present state of the law and the current interpretation of section 28-1-104, MCA, Fratt v. Daniels-Jones, supra, is no longer the proper authority.

The District Court also ruled that the Robertses were grossly negligent and therefore unable to avail themselves the use of section 28-1-104, MCA, for failing to remain abreast of Iversons' delinquency. There is nothing in the record supporting the ruling that the Robertses were grossly negligent in their duty under the terms of the contract. The fact that the Robertses were having trouble collecting from the Iversons does not necessarily impute to them the knowledge that the Iversons had defaulted on their Morin obligation. Indeed, without notice from Morin that a default existed, they could not have been expected to correct the default. Also, the record shows that upon learning of the default, they immediately contacted their attorney, asked Morin for a payoff figure, and made a written offer to perform. Morin, through her attorney, rejected this offer. As for Morin's reasons behind the rejection, she testified:

> "Q. Now, to your knowledge, do either you or your attorney object to the amount offered? Or you just objected to taking any amount of money? A. <u>I just objected. I just wanted the house.</u>

".  .  .

"Q.  To your knowledge has the property
appreciated in value since it was sold in
1974? A.  Yes, it's a much better property
now."  (Emphasis supplied.)

There are instances where a party who fails to
perform cannot utilize section 28-1-104, MCA, but this is
not one of those instances. We find that the Robertses were
not grossly negligent in their duty to Morin and clearly
fall within the parameters of section 28-1-104, MCA.

The application of equity to deny forfeiture has been
used by this Court and courts of other jurisdictions.  In
State ex rel. Howeth v. D. A. Davidson & Co. (1973), 163
Mont. 355, 517 P.2d 722, we stated:

"Equity will intercede in cases where forfei-
ture of the purchaser's equitable title is
provided by the purchase contract in the
event of his default.  If the defaulting
purchaser can make a showing that he is
equitably entitled to such relief and that
his breach of duty was not grossly negligent,
willful or fraudulent, the courts will, in
proper cases, relieve the defaulting
purchaser from the forfeiture."  517 P.2d at
730.

The Supreme Court of Hawaii in Jenkins v. Wise (Haw.
1978), 574 P.2d 1337, stated:

".  .  . Accordingly, where the vendee's breach
has not been due to gross negligence, or to
deliberate or bad-faith conduct, on his part,
and the vendor can reasonably and adequately
be compensated for his injury, courts in
equity will generally grant relief against
forfeiture and decree specific performance of
the agreement. [Citations omitted.] .  .  ."
574 P.2d at 1341.

Also, in MacFadden v. Walker (1971), 97 Cal.Rptr.
537, 488 P.2d 1353, the California Court held:

".  .  . As we pointed out in the Barkis case,
allowing the defaulting vendee to cure his
default and perform the contract may often be
the fairest solution, for the unjust enrich-
ment of the vendor that is precluded by

> restitution of the excess of part payments over the damages caused by the breach may bear little or no relation to the forfeiture imposed on the vendee if his right to perform the contract is terminated. 'A vendee in default who is seeking to keep the contract alive, however, is in a better position to secure relief than one who is seeking to recover back the excess of what he has paid over the amount necessary to give the vendor the benefit of his bargain after performance under the contract has terminated. In the latter situation it may be so difficult to compute the vendor's damages that the vendee will be unable to prove that the vendor will be unjustly enriched by allowing him to keep all the money that has been paid . . .'" 488 P.2d at 1356.

Here, equitable principles must be invoked to achieve a just result.

The equitable reasons to deny forfeiture are quite apparent. In comparing the equities of this case, the District Court failed to include one very important factor. The factor not included in the comparison was that Morin would receive the property, not at its 1974 value, but at its greatly increased 1982 value. Morin's predecessor in interest sold the property to the original buyer for $9,500 in 1974. By the time the Robertses sold the property in 1977, the value had increased to $23,000. If Morin were allowed to keep the property, she would not only have received $2,027.21, or 21 percent of the original sales price, but she would be enhanced by the increased value of the property.

On the other hand, the Robertses would retain only the amount received on the Iversons contract, amounting to about $7,000. Though the Robertses may have recovered roughly 47 percent of their original equity, they have been denied the benefit of the increased value of the property.

By applying section 28-1-104, MCA, to deny a forfei-

ture, and by requiring the Robertses to make full payment of the balance of the original contract to Morin, the equities in this case are resolved--that is, Morin receives the benefit of the original contract, and the Robertses retain the land, less their payment to Morin. Further, the Robertses are obligated to Morin for any expenses incurred by Morin relating to the Iversons' possession of the property. This would consist of utility expenses, maintenance expenses, repair expenses and delinquent taxes. It does not include, however, any improvements made by Morin while this action was pending. See, Larry C. Iverson, Inc. v. Bouma (1981), ___ Mont. ___, 639 P.2d 47, 38 St.Rep. 1911.

Morin is responsible for attorney fees and costs.

The judgment of the District Court is reversed, and the cause is remanded to the District Court for further proceedings consistent with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

-11-